## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRED WHELAN and MEGAN ELLIS, on behalf of themselves and all others similarly situated, | Case No. 1:22-cv-07598 |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| DILIGENT CORPORATION, | |
| Defendant. | |

Plaintiffs, Fred Whelan and Megan Ellis (collectively, "Plaintiffs") through their attorneys, brings this Amended Class Action Complaint against the Defendant, Diligent Corporation ("Diligent" or "Defendant"), alleging as follows:

### INTRODUCTION

1.      Diligent, a software-as-a-service company serving corporate boards across the country, lost control over its employees' highly sensitive personal information in a May 2022 data breach by cybercriminals ("Data Breach").

2.      On or around May 21, 2022, hackers bypassed Diligent's cybersecurity safeguards undetected and breached its systems. On information and belief, once inside, cybercriminals were able to pilfer the personally identifiable information ("PII") belonging to over 1,100 Diligent employees.

3.      That PII included employees' human resources records, such as their names, email addresses, mailing addresses, and Social Security numbers.

4.      Diligent's "security team" did not discover the hack until two days later, meaning Diligent had no effective means to prevent, detect, or stop data breaches before cybercriminals

could access employee PII.

5.      Diligent is well-aware of its duty to protect sensitive information. As part of its services, it grades its clients on their cybersecurity preparedness, assigning them a "Cyber Risk Scorecard" that "highlight[s] cybersecurity vulnerabilities and help prevent data breaches."[1]

6.      Diligent also promises to "implement technical and organizational measures to ensure a level of security appropriate to the risk to the personal information we process."[2] In other words, Diligent acknowledges it has a duty to protect PII using reasonable means commensurate with the highly sensitive data it collects.

7.      Indeed, Diligent has a duty to protect employee PII through its policies and state and federal law.

8.      On information and belief, Diligent failed in that duty because it did not implement or adhere to cybersecurity measures that would have prevented or stopped cybercriminals from accessing its employees' PII.

9.      Following the Data Breach, Diligent said that it would "further enhance its security controls, including by migrating additional workloads and data to the Diligent-managed environment[,]"—security measures that it should have implemented *before* the Data Breach.

10.     Diligent's negligent conduct puts Plaintiffs and Diligent's current and former employees at risk.

11.     Armed with the employees' PII, data thieves can commit various crimes including, e.g., opening new financial accounts in employees' names, taking out loans in employees' names,

---

[1] *See* SecurityScorecard's website article announcing its partnership with Diligent at https://securityscorecard.com/company/press/diligent-delivers-cyber-risk-scores-directly-to-board-directors (last visited Aug. 8, 2022).

[2] *See* Diligent's privacy policy at https://www.diligent.com/privacy/ (last visited Aug. 8, 2022).

using employees' names to obtain medical services, using employees' information to obtain government benefits, filing fraudulent tax returns using employees' information, obtaining driver's licenses in employees' names but with another person's photograph, and giving false information to police during an arrest.

12.     As a result of the Data Breach, Diligent's current and former employees have been exposed to a heightened and imminent risk of fraud and identity theft. They must now and in the future closely monitor their financial accounts to guard against identity theft.

13.     Employees also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

15.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Diligent's data security systems, future annual audits, and adequate credit monitoring services funded by Diligent.

**PARTIES**

16.     Plaintiff, Fred Whelan, is a natural person and citizen of Massachusetts, residing in Massachusetts, where he intends to remain. Plaintiff Whelan is a former Diligent employee and Data Breach victim, receiving Diligent's Breach Notice in July 2022. Plaintiff Whelan worked for Diligent from approximately 2015 to 2016.

17.     Plaintiff, Megan Ellis, is a natural person and citizen of California, residing in San Ramon, California, where she intends to remain. Plaintiff Ellis is a former employee of Diligent

and a Data Breach victim, receiving Diligent's Breach Notice. Plaintiff Ellis worked for Diligent's subsidiary from approximately 2017 to 2019.

18.     Defendant, Diligent, is a New York Corporation, with its principal place of business at 111 W 33rd St 16th Floor, New York, NY 10001.

## JURISDICTION & VENUE

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

20.     This Court has personal jurisdiction over Defendant because Diligent maintains its principal place of business this District and does substantial business in this District.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND FACTS

### a. Diligent

22.     Diligent is a "SaaS" company that provides management software to corporate boards. Holding itself out as the "#1 Global Board Meeting Software," Diligent says that "Diligent Board Management Software fulfills the board's ability to meet the challenges of modern governance by providing your board with the right tools, analytics and insights to get a better pulse on the market and overall performance of your business."[3]

---

[3] *See* Diligent's landing page at https://www.diligent.com/landing/solutions/lp-board-portal-demo/?&utm_source=google&utm_medium=cpc&_bt=611705541966&_bk=diligent%20corporation&_bm=b&_bn=g&gclid=CjwKCAjw6MKXBhA5EiwANWLODLEKe17KlKrUU0AwTofmfF135LImmeZWupSe_KQ2sCTJRh4ScR-0MRoCCOUQAvD_BwE&gclsrc=aw.ds (last visited Aug. 8, 2022).

23.    In so doing, Diligent advertises that it employs the "world's leading security standards" to protect information stored on its systems:



**Security**

Diligent's products are backed by the world's leading security standards with secure data centers located within your region or country.[4]

24.    It also consults on cybersecurity for its clients using cybersecurity "scorecards" that grade a company's security systems.[5]

25.    Diligent's privacy policy promises to protect the sensitive information it collects using "a level of security appropriate to the risk to the personal information we process."[6]

### 6. Information Security and Storage

We implement technical and organizational measures to ensure a level of security appropriate to the risk to the personal information we process. These measures are aimed at ensuring the ongoing integrity and confidentiality of personal information. In the limited cases where we process credit card transactions, we use PCI compliant third party payment processors to process these transactions in a secure manner. We evaluate these measures on a regular basis to ensure the security of the processing.

---

[4] *Id.*

[5] *See* SecurityScorecard's website article announcing its partnership with Diligent at https://securityscorecard.com/company/press/diligent-delivers-cyber-risk-scores-directly-to-board-directors (last visited Aug. 8, 2022).

[6] *See* Diligent's privacy policy at https://www.diligent.com/privacy/ (last visited Aug. 8, 2022).

26.     But, on information and belief, Diligent fails to strictly adhere to these policies in maintaining its own employees' PII.

**b.  Diligent Fails to Safeguard Employee PII**

27.     Plaintiffs are former employee of Diligent or its subsidiaries.

28.     As a condition of employment with Diligent, employees were required to disclose their PII, including names, email addresses, mailing addresses, and Social Security numbers.

29.     Diligent collects and maintains that employee PII in its computer systems, even after employees no longer worked for Diligent.

30.     In collecting and maintaining the PII, Diligent agreed it would safeguard the data according to its internal policies and state and federal law.

31.     Even so, on or about May 21, 2022, hackers bypassed Diligent's security systems and accessed employee PII.

32.     Hackers did so undetected, as Diligent would not discover the hack until two days after it started.

33.     By the time Diligent's "security team" discovered the Data Breach, cybercriminals had already accessed its employees' PII, including their names, email addresses, mailing addresses, and Social Security numbers.

34.     After discovering the breach, Diligent claims that it "contained the event" the next day.

35.     Diligent then "investigate[d]" the breach and notified its employees about the breach one month later. A true and correct copy of the breach notice ("Breach Notice") is attached as **Exhibit A**.

36.     Although Diligent investigated the Data Breach for a month before notifying its

employees, Diligent's Breach Notice did not explain how the hack happened, why it took three days for Diligent to detect and contain the hack, exactly what information the hackers stole from individuals, whether Diligent paid a ransom to the hackers, and whether it knows if its employees' information was shared on the dark web. Indeed, Diligent disclosed that employees' information only "may have been accessed" without clarifying exactly what information hackers accessed.

37.    On information and belief, cybercriminals could breach Diligent's systems because Diligent failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee PII. Diligent's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Breach Notice makes clear that Diligent cannot, or will not, determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

38.    On information and belief, a ransomware hacker group named HiveLeaks were the cybercriminals that breached Diligent's systems.

39.    On information and belief, HiveLeak routinely posts stolen PII on the dark web following data breaches.

**c. Plaintiff Whelan's Experience**

40.    Plaintiff is a former Diligent employee.

41.    As a condition of Plaintiff's employment, Diligent required him to provide his PII.

42.    Plaintiff provided his PII to Diligent and trusted that the company would use reasonable measures to protect it according to Diligent's internal policies and state and federal law.

43.    As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice

of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

44.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. He is also receiving spam calls and texts following the Data Breach, showing that his information is being misused to persistently contact him with unwanted solicitations.

45.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

46.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

47.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and possibly criminals.

48.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

### d.  Plaintiff Ellis' Experience

49.    Plaintiff is a former Diligent employee.

50.    As a condition of Plaintiff's employment, Diligent required her to provide her PII.

51.    Plaintiff provided her PII to Diligent and trusted that the company would use reasonable measures to protect it according to Diligent's internal policies and state and federal law.

52.    As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

53.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

54.    In fact, following the Data Breach, in September 2022, Plaintiff's Chase debit card was fraudulently breached, suggesting that her information has been placed in the hands of cybercriminals.

55.    Plaintiff also received spam calls and texts following the Data Breach, showing that her information is being misused to persistently contact her with unwanted solicitations.

56.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

57.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

58.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands

of unauthorized third parties and possibly criminals.

59.     Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

### e. Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft

60.     Plaintiffs and members of the proposed Classes have suffered injury from the misuse of their PII that can be directly traced to Defendant.

61.     As a result of Diligent's failure to prevent the Data Breach, Plaintiffs and the proposed Classes have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.  The loss of the opportunity to control how their PII is used;

b.  The diminution in value of their PII;

c.  The compromise and continuing publication of their PII;

d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.  Delay in receipt of tax refund monies;

g.  Unauthorized use of stolen PII; and

h.  The continued risk to their PII, which remains in the possession of defendant and

is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PII in their possession.

62.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

63.     The value of Plaintiffs' and the proposed Classes' PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

64.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

65.     One such example of criminals using PII for profit is the development of "Fullz" packages.

66.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

67.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Classes' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam

telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Classes, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Classes' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

68.    Defendant disclosed the PII of Plaintiffs and members of the proposed Classes for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiffs and members of the proposed Classes to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

69.    Defendant's failure to properly notify Plaintiffs and members of the proposed Classes of the Data Breach exacerbated Plaintiffs' and members of the proposed Classes' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**f.    Defendant failed to adhere to FTC guidelines.**

70.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

71.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.   protect the personal customer information that they keep;

b.   properly dispose of personal information that is no longer needed;

c.   encrypt information stored on computer networks;

d.   understand their network's vulnerabilities; and

e.   implement policies to correct security problems.

72.   The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

73.   The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

74.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

75.   Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**CLASS ACTION ALLEGATIONS**

76.   Plaintiffs are suing on behalf of themselves and the proposed nationwide class ("Class") and state subclass ("Subclass") (together "Classes"), defined as follows, pursuant to

Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> **Nationwide Class**: All individuals residing in the United States whose PII was compromised in the Data Breach.

> **Massachusetts Subclass**: All individuals residing in Massachusetts whose PII was compromised in the Data Breach.

> **California Subclass:** All individuals residing in California whose PII was comrpomsied in the Data Breach.

Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

77.     Plaintiffs reserve the right to amend the class definition.

78.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a.     **Numerosity**. Plaintiffs are representatives of the proposed Classes, consisting of at least 1,100 members, far too many to join in a single action;

b.     **Ascertainability**. Members of the Classes are readily identifiable from information in Defendant's possession, custody, and control;

c.     **Typicality**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d.     **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Classes' interests. Their interests do not conflict with the Classes' interests and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Classes' behalf, including as lead counsel.

e.    **Commonality**. Plaintiffs' and the Classes' claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Classes. Indeed, it will be necessary to answer the following questions:

i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Classes' PII;

ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.    Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv.    Whether Defendant breached contract promises to safeguard Plaintiffs' and the Classes' PII;

v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.    Whether Defendant's Breach Notice was reasonable;

vii.    Whether the Data Breach caused Plaintiffs' and the Classes' injuries;

viii.    What the proper damages measure is; and

ix.    Whether Plaintiffs and the Classes are entitled to damages, treble damages, or injunctive relief.

79.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
### Negligence
### (On Behalf of Plaintiffs and the Classes)

80.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

81.    Plaintiffs and members of the Classes entrusted their PII to Defendant. Defendant owed to Plaintiffs and other members of the Classes a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

82.    Defendant owed a duty of care to Plaintiffs and members of the Classes because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII— just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and members of the Classes' PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

83.    Defendant owed to Plaintiffs and members of the Classes a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Classes the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and members of the Classes to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

84.    Defendant owed these duties to Plaintiffs and members of the Classes because they

are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and members of the Classes' personal information and PII.

85.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII— whether by malware or otherwise.

86.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs' and members of the Classes' and the importance of exercising reasonable care in handling it.

87.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiffs and members of the Classes which actually and proximately caused the Data Breach and Plaintiffs' and members of the Classes' injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Classes, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Classes' injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and members of the Classes have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

88.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and members of the Classes

actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### COUNT II
### Negligence Per Se
### (On Behalf of Plaintiffs and the Classes)

89.    Plaintiffs and members of the Classes incorporate the above allegations as if fully set forth herein.

90.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and members of the Classes' PII.

91.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Classes' sensitive PII.

92.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its employees' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its employees in the event of a breach, which ultimately came to pass.

93.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Classes.

94.     Defendant had a duty to Plaintiffs and the members of the Classes to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and the Classes' PII.

95.     Defendant breached its respective duties to Plaintiffs and members of the Classes under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and members of the Classes' PII.

96.     Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se.

97.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and members of the Classes, Plaintiffs and members of the Classes would not have been injured.

98.     The injury and harm suffered by Plaintiffs and members of the Classes were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Classes to suffer the foreseeable harms associated with the exposure of their PII.

99.     Had Plaintiffs and members of the Classes known that Defendant did not adequately protect their PII, Plaintiffs and members of the Classes would not have entrusted Defendant with their PII.

100.     As a direct and proximate result of Defendant's negligence per se, Plaintiffs and

members of the Classes have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**COUNT III**
**Breach of an Implied Contract**
**(On Behalf of Plaintiffs and the Classes)**

101.    Plaintiffs and members of the Classes incorporate the above allegations as if fully set forth herein.

102.    Defendant offered to employ Plaintiffs and members of the Classes in exchange for their PII.

103.    In turn, and through internal policies, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard employee PII.

104.    Plaintiffs and the members of the Classes accepted Defendant's offer by providing PII to Defendant in exchange for employment with Defendant.

105.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and members of the Classes with prompt and adequate notice of all unauthorized access and/or theft of their PII.

106.    Plaintiffs and the members of the Classes would not have entrusted their PII to Defendant in the absence of such agreement with Defendant.

107.    Defendant materially breached the contract(s) it had entered with Plaintiffs and members of the Classes by failing to safeguard such information and failing to notify them

promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiffs and members of the Classes by:

    a. Failing to properly safeguard and protect Plaintiffs' and members of the Classes' PII;

    b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c. Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

108.    The damages sustained by Plaintiffs and members of the Classes as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

109.    Plaintiffs and members of the Classes have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

110.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

111.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

112.    Defendant failed to advise Plaintiffs and members of the Classes of the Data Breach

promptly and sufficiently.

113.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

114.    Plaintiffs and members of the Classes have sustained damages because of Defendant's breaches of its agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

115.    Plaintiffs and members of the Classes incorporate the above allegations as if fully set forth herein.

116.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

117.    Plaintiffs and members of the Classes conferred a benefit upon Defendant in the form of services through employment.

118.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and members of the Classes. Defendant also benefited from the receipt of Plaintiffs' and members of the Classes' PII, as this was used to facilitate their employment.

119.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs and the proposed Classes' services and their PII because Defendant failed to adequately protect their PII. Plaintiffs and the proposed Classes would not have provided their PII or worked for Defendant at the payrates they did had they known Defendant would not adequately protect their PII.

120.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Classes all unlawful or inequitable proceeds received by it because

of its misconduct and Data Breach.

## COUNT V
### Invasion of Privacy, Mass. Gen. Laws. Ch. 214 § 1B
### (On Behalf of Plaintiff Whelan and the Massachusetts Subclass)

121.    Plaintiff and members of the Subclass incorporate all previous paragraphs as if fully set forth herein.

122.    Plaintiff and the Subclass had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

123.    Defendant owed a duty to its patients, including Plaintiff and the Subclass, to keep this information confidential.

124.    The unauthorized acquisition (*i.e.,* theft) by a third party of Plaintiff and Subclass members' PII is highly offensive to a reasonable person.

125.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Subclass disclosed their sensitive and confidential information to Defendant to receive pharmaceutical services, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Subclass were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

126.    The Data Breach constitutes an intentional interference with Plaintiff's and the Subclass's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

127.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

128.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Subclass in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

129.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Subclass.

130.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Subclass were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Subclass to suffer damages.

131.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Subclass since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

132.    Plaintiff and the Subclass have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Subclass.

133.    In addition to injunctive relief, Plaintiff Whelan, on behalf of himself and the other members of the Subclass, also seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT VI
### Declaratory Judgment and Injunctive Relief
### (On behalf of Plaintiffs and the Classes)

134.    Plaintiffs incorporate all previous paragraphs as if fully set forth below.

135.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

136.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiffs allege Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiffs and the Classes continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

137.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII with which it is entrusted, specifically including information pertaining to  financial records it obtains from its employees, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

b.    Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure its customers' personal and financial information; and

c.    Defendant's breach of its legal duty continues to cause harm to Plaintiffs and the Classes.

138.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its employees' (i.e. Plaintiffs' and the Classes') data.

139.    If an injunction is not issued, Plaintiffs and the Classes will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiffs and the Classes will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiffs and the Classes for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiffs and the Classes, which include monetary damages that are not legally quantifiable or provable.

140.    The hardship to Plaintiffs and the Classes if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

141.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiffs, the Classes, and the public at large.

**COUNT VII**
**Violation of California's Consumer Records Act**
**Cal. Bus. Code § 1798.80, *et seq.***
**(On behalf of Plaintiff Ellis and the California Subclass)**

142.    Plaintiffs incorporate all previous paragraphs as if fully set forth below.

143.    Under California law, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the

data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (CAL. CIV. CODE § 1798.2.) The disclosure must "be made in the most expedient time possible and without unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (CAL. CIV. CODE § 1798.82, subdiv. b.)

144.    The data breach constitutes a "breach of the security system" of Defendant.

145.    An unauthorized person acquired the personal, unencrypted information of Plaintiff Ellis and the California Subclass.

146.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff Ellis and the California Subclass, but waited more than a month to notify them. This was an unreasonable delay under the circumstances.

147.    Defendant's unreasonable delay prevented Plaintiff Ellis and the California Subclass from taking appropriate measures from protecting themselves against harm.

148.    Because Plaintiff Ellis and the California Subclass were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

149.    Plaintiff Ellis and the California Subclass are entitled to equitable relief and damages in an amount to be determined at trial.

**COUNT VIII**
**Violation of California's Unfair Competition Law**
**(On behalf of Plaintiff Ellis and the California Subclass)**

150.    Plaintiffs incorporate all previous paragraphs as if fully set forth below.

151.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

152.    Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), and other state data security laws.

153.    Defendant stored the PII of Plaintiff Ellis and the California Subclass in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff Ellis' and the California Subclass' PII secure and prevented the loss or misuse of that PII.

154.    Defendant failed to disclose to Plaintiff Ellis and the California Subclass that their PII was not secure. However, Plaintiff Ellis and the California Subclass were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiff Ellis and the California Subclass on notice that their PII was not secure, which Defendant had a duty to disclose.

155.    Defendant also violated California Civil Code § 1798.150 by failing to employ reasonable security measures, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff Ellis' and the California Subclass's PII.

156.    Had Defendant complied with these requirements, Plaintiff Ellis and the California Subclass would not have suffered the damages related to the data breach.

157.    Defendant's conduct was unlawful, in that it violated the Consumer Records Act.

158.    Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

159.    Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

160.    Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

161.    Instead, Defendant made the PII of Plaintiff Ellis and the California Subclass accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff Ellis and the California Subclass to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

162.    As a result of those unlawful and unfair business practices, Plaintiff Ellis and the California Subclass suffered an injury-in-fact and have lost money or property.

163.    The injuries to Plaintiff Ellis and the California Subclass greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

164.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

165.    Therefore, Plaintiff Ellis and the California Subclass are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## PRAYER FOR RELIEF

Plaintiffs and members of the Classes demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Classes, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Classes;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Classes;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.    Awarding Plaintiffs and the Classes damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiffs and the Classes in an amount to be determined at trial;

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiffs and the Classes leave to amend this complaint to conform to the

        evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 8th day of May, 2023.


Dated:  May 8, 2023                          Respectfully submitted,

                                             By*:* */s/ Raina C. Borrelli*
                                                 Raina C. Borrelli
                                                 TURKE & STRAUSS LLP
                                                 613 Williamson St., Suite 201
                                                 Madison, WI 53703
                                                 Telephone (608) 237-1775
                                                 Facsimile: (608) 509-4423
                                                 raina@turkestrauss.com

                                                 James J. Bilsborrow
                                                 WEITZ & LUXENBERG, PC
                                                 700 Broadway
                                                 New York, NY 10003
                                                 T: (212) 558-5500
                                                 F: (212) 344-5461
                                                 jbilsborrow@weitzlux.com

                                                 *Attorneys for Plaintiffs and the Proposed*
                                                 *Classes*