**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRED WHELAN and MEGAN ELLIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DILIGENT CORPORATION,<br><br>Defendant. | Case No. 1:22-cv-07598-AT<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## I.    INTRODUCTION

Plaintiffs Fred Whelan, Jr., and Megan Ellis, on behalf of themselves and all others similarly situated, hereby respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.[1]

After a February 28, 2023, mediation session with Mr. Bruce Friedman, an experienced mediator with JAMS, and several additional weeks of hard-fought, arm's-length negotiations, Plaintiffs and Defendant Diligent Corporation ("Defendant" or "Diligent") reached a Settlement that is fair, adequate, and reasonable. Under the Settlement Agreement ("Settlement" or "S.A."), attached hereto as **Exhibit 1**, Diligent will pay up to $200,000 in cash benefits to Settlement Class Members, who are eligible to recover compensation for up to $500 of ordinary out-of-pocket expenses, up to $2,500 in extraordinary out-of-pocket expenses, up to $20 per hour for up to three

---

[1] Defendant Diligent Corp. does not oppose the relief sought in this motion and supports preliminary approval of the Settlement.

hours of lost time, and Diligent also will provide one or two years of credit monitoring protection. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class.

Pursuant to Rule 23(e), Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Angeion as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Fred Whelan, Jr. and Megan Ellis as Representatives of the Class; (6) appointing Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide Settlement Class Members with substantial and immediate monetary relief without the risk of delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

## II.     STATEMENT OF FACTS

### a.  Diligent's Business

Diligent is a "SaaS" – Software-as-a-Service – company that provides management and governance software to board members of corporations, government organizations, and not-for-profit groups across the country, allowing them to share information and collaborate. Amended Compl., Doc. 33, ¶¶1, 22. As an employer, Diligent maintains certain information, including full

2

names, dates of birth, email addresses, mailing addresses, and Social Security numbers, along with other information contained within human resources records, about its current and former employees. *Id.* ¶28.

### b. The Security Incident

On Saturday May 21, 2022, Diligent's network was attacked by the ransomware hacker group HiveLeaks (the "Security Incident"). *Id.* ¶¶31, 38. On May 23, 2022, Diligent's security team discovered the Security Incident. *Id.* ¶¶32, 33. However, the hackers had already accessed Diligent's employees' personal information, including their names, email addresses, mailing addresses, and Social Security numbers. *Id.* ¶33. HiveLeaks routinely posts stolen data on the dark web following data breaches. *Id.* ¶39. Despite knowing about the Security Incident in May, Diligent didn't begin to notify its current and former employees about the Security Incident until end of June 2022. *Id.* ¶35, Ex. A. Plaintiffs are both former Diligent employees and victims of this Security Incident, along with approximately 2,569 other current and former employees. *Id.* ¶¶2, 40, 49. Diligent denies these allegations and denies that Plaintiffs and the Settlement Class are entitled to any relief. S.A. at 1; *see also id.* ¶77.

### c. Procedural History

Following Diligent's notification to those affected by the Security Incident and an investigation by Settlement Class Counsel, Plaintiff Fred Whelan, Jr. filed this class action lawsuit against Diligent in this Court on September 6, 2022. *See* Compl., Doc. 1. On May 8, 2023, Megan Ellis was added as a Plaintiff. Amended Compl., Doc. 33. Plaintiffs allege that, as a result of the Security Incident, Diligent was liable for negligence and negligence per se, unjust enrichment, breach of contract, invasion of privacy under Massachusetts law, and declaratory and injunctive relief. *Id.*

Recognizing the benefits of early resolution of Plaintiffs' and the putative class's claims, the parties agreed to mediate on February 28, 2023, with Bruce Friedman from JAMS. Borrelli Decl. ¶¶6, 8. After agreeing to mediate and prior to the mediation, the parties negotiated a number of preliminary terms, including a structure for the settlement. *Id*. ¶7. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id*. Mr. Friedman assisted the parties in reaching resolution on certain key terms, but it was not until weeks later that the parties reached final resolution after continued negotiations through Mr. Friedman. *Id*. ¶¶8-9. A term sheet was agreed to on April 16, 2023, and in the weeks that followed, the parties diligently negotiated and prepared the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id*. The Settlement was finalized and executed on June 22, 2023. *See* Ex. 1. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members.

### d. Settlement Terms

#### i. The Settlement Classes

The Settlement provides for the certification of the Settlement Class, defined as "all individuals, or their respective successors or assigns, who reside in the United States and whose Personal Information was impacted by the Security Incident." S.A. ¶38. "Personal Information" means information that personally identifies an individual or in combination with other information can be used to personally identify an individual, which includes but is not limited to how personally identifiable information is defined under state law. S.A. ¶28.

There is also a California Settlement Subclass, which includes all Settlement Class Members who resided in California on May 23, 2023. S.A. ¶4.

"Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline. S.A. ¶27.

### ii. Settlement Benefits

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they allegedly have suffered as a result of the Security Incident. The benefits of the Settlement are available to all Settlement Class Members. Diligent will pay up to $200,000 to Settlement Class Members for valid and timely claims arising out of the Security Incident and also provide credit monitoring services. S.A. ¶¶45-48`.

### 1. Compensation for Documented Ordinary Losses

Settlement Class Members are eligible to receive compensation of up to $500 for their unreimbursed out-of-pocket costs and expenditures that are "fairly traceable to the Security Incident." S.A. ¶45(b). The claim must be supported by an attestation that the Settlement Class Member believes the unreimbursed losses were incurred as a result of the Security Incident and supported by reasonable documentation, which may include credit card statements, invoices, telephone records, and receipts. *Id*. Personal certifications, declarations, and affidavits alone are not sufficient but may provide clarification or context for other documentation. *Id*.

### a. Documented Out-of-Pocket Expenses

Documented, ordinary out-of-pocket expenses may include, but are not limited to, the following unreimbursed losses: miscellaneous costs such as bank fees, postage, copying, mileage, telephone charges, and notary charges, and costs incurred as a result of purchasing credit monitoring or other identity theft insurance services between June 22, 2022, and the end of the Claims Period. S.A. ¶45(b)(iv). The Settlement Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Security Incident. *Id*.

### b.  Reimbursement for Attested Lost Time

Additionally, the Settlement also allows Settlement Class Members who have spent time monitoring accounts or otherwise dealing with issues related to the Security Incident to submit a claim for reimbursement for that time of $20 per hour up to 3 hours (for a total of $60) provided they provide an attestation on the claim form that the activities they performed were related to the Security Incident. S.A. ¶45(c). Claims for Lost Time are subject to the $500 cap for Out-of-Pocket Losses. *Id*.

### 2.  Compensation for Documented Extraordinary Losses

Settlement Class Members who submit a valid and timely claim are also eligible to recover up to $2,500 of their actual, documented, and unreimbursed monetary losses "more likely than not caused by the Security Incident" occurring between May 23, 2022, and the end of the Claims Period. S.A. ¶45(a). The losses must be separate from Out-of-Pocket Losses and Lost Time and the Settlement Class Member must have "reasonable efforts" to avoid, or seek reimbursement for, the loss. *Id*. This claims category ensures that those who suffer significant and unreimbursed economic loss due to identity theft or other fraud due to the Security Incident can recover for that loss.

### 3.  Claims for California Settlement Subclass Members.

California Settlement Subclass Members can submit a claim for reimbursement of $50 per claimant ("California Payment"), subject to the $500 cap for Out-of-Pocket Losses. S.A. ¶45(d). Pursuant to that cap, a Settlement Class Member cannot be reimbursed more than $500 for valid Out-of-Pocket Losses, Lost Time, and California Payment claims. *Id*.

### 4.  Credit Monitoring Protections

In addition monetary reimbursements, Plaintiffs negotiated for significant additional credit monitoring and identity theft protection, to include credit monitoring through all three national credit reporting bureaus and with at least $1,000,000 in identity theft insurance, for the Settlement Class. S.A. ¶47. All Settlement Class Members that previously enrolled in the credit monitoring services offered by Defendant following the Security Incident can enroll in an additional one year of credit monitoring. S.A. ¶47(a). And any Settlement Class Member who did not previously enroll in the credit monitoring services offered by Defendant following the Security Incident shall have the ability to make a claim for two years of credit monitoring services. S.A. ¶47(b). This Settlement benefit carries with it significant value, and Diligent will pay for this benefit separate from and in addition to the cash benefits offered by the Settlement. S.A. ¶48.

### 5. Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiffs' service awards until after they agreed on all material terms of relief to the Settlement Class. Borrelli Decl. ¶8. Diligent will pay the costs of notice to the Settlement Class and costs of Settlement Administration. S.A. ¶59. Diligent will also pay for Plaintiffs' attorneys' fees, costs, and expenses, and service award to Plaintiff. S.A. ¶¶73, 75. Diligent will pay the attorneys' fees, not to exceed $100,000, in addition to any benefits provided to Settlement Class Members and the cost of Settlement administration. S.A. ¶75. Diligent will also pay up to an additional $8,000 to Plaintiffs' Counsel for reimbursement of costs and expenses. *Id*. Plaintiffs shall seek, and Diligent agrees to pay, a service award to each Plaintiff of $2,500, for a total of $5,000, subject to Court approval. S.A. ¶73. These amounts are separate and apart from any other sums agreed under the Settlement. S.A. ¶¶74, 76. Settlement Class Counsel will separately petition the Court for such

fees, costs, and expenses at least 14 days before the Opt-Out and Objection Deadlines, unless the Court orders otherwise. S.A. ¶¶73, 75.

### iii.  Notice to Class Members

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator, Angeion, will collect Settlement Class Member information and distribute notice through two means. First, because Defendant has email address and/or mailing address information for many of the Settlement Class Members, Defendant will provide Angeion with the Settlement Class List within 7 days after the date of the Preliminary Approval Order. S.A. ¶56. Then, within 30 days after the date of the Preliminary Approval Order, Angeion will engage in a direct mail campaign, disseminating the Short Form Notice via email or U.S. Mail to the Settlement Class Members on the Settlement Class List. S.A. ¶¶21, 56, 57. Angeion will also create a Settlement Website where it will post all documents relating to this case and the Settlement, including the Long Form Notice and Claim Form. S.A. ¶¶44, 56-58. For notices sent via postcard that are returned as undeliverable, the Settlement Administrator shall use reasonable efforts to identify an updated mailing address and resend the postcard notice if an updated mailing address is identified. S.A. ¶57. And for notices sent via email that are returned as undeliverable, the Settlement Administrator shall send a postcard notice through First Class U.S. Mail to the extent a valid mailing address is available. *Id*.

### iv.  Claims, Objections, Opt-Outs, and Termination

Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via the Settlement Website or physically by mail to the Settlement Administrator. S.A. ¶49. Settlement Class Members will have 120 days from the day the Settlement Administrator notifies the Settlement Class to timely submit claims. S.A. ¶¶7-8. This Claims Period will allow Settlement Class Members to recover for fraud, identity theft, ordinary losses, and lost time that

does not occur immediately after the Data Incident (which can be the case when PII is stolen by cybercriminals). The Settlement Administrator will adjudicate all claims, including by reviewing any documents a claimant attaches to support their claim. S.A. ¶50. Settlement Class Members will have 21 days to address any defects identified by the Settlement Administrator, who will determine whether the Settlement Class Member has cured them. S.A. ¶50(f). If the Settlement Administrator determines the deficiencies have not been cured, the Settlement Class Member has 21 days to submit an appeal in writing. S.A. ¶50(g). If the parties agree on disposition of that appeal, the disposition is final and non-appealable, but if the parties cannot agree on disposition of the appeal, the dispute will be submitted to a third party neutral either agreed-upon by the parties or appointed the Court. *Id*. The decisions of the claims referee regarding the validity of claims will be final and non-appealable. *Id*.

Settlement Class Members may opt-out from receiving the Settlement's benefits by submitting a Request for Exclusion to the Settlement Administrator no later than 60 days after the Notice Deadline. S.A. ¶¶24-25, 60. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. S.A. ¶60(a). No person shall purport to exercise any exclusion rights of any other person, or purport (a) to opt-out Settlement Class Members as a group, in the aggregate, or as a class involving more than one Settlement Class Member; or (b) to opt-out more than one Settlement Class Member on a single paper, or as an agent or representative. S.A. ¶60(b). Settlement Class Members may also object to the Settlement by submitting written objections to the Settlement Administrator no later than 60 days after the Notice Deadline. S.A. ¶¶23, 61. The written objection must include (i) the name of the proceedings; (ii) the Settlement

Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. S.A. ¶61.

### v.  Release

As part of the Settlement, Plaintiffs and Settlement Class Members agree to release Diligent from all claims and causes of action asserted or that could have been asserted by any Settlement Class Member that relate to or arise from the Security Incident, the facts alleged in the Amended Class Action Complaint or subsequent operative complaint, Diligent's information security policies and practices, or Diligent's maintenance or storage of Personal Information. S.A. ¶¶30-32; S.A. § XIV.

## III.    LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (quoting *Denney v.*

*Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005) (aff'd in part and vacated in part, 443 F.3d 253 (2d Cir. 2006)). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

In granting preliminary approval, courts direct notice to be provided to settlement class members, who are given the opportunity to exclude themselves from or object to the settlement. *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). At the Final Fairness Hearing, Settlement Class Members may be heard by the Court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *Id*.

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement here warrants preliminary approval so that the Settlement Class Members can be notified of the Settlement and provided an opportunity to exclude themselves or voice objection.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the settlement class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination

as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992).

Plaintiffs here seek to certify, for settlement purposes only, a Settlement Class defined as "all individuals, or their respective successors or assigns, who reside in the United States and whose Personal Information was impacted by the Security Incident," and a California Settlement Subclass defined as "all Settlement Class Members who resided in California on May 23, 2022." S.A. ¶¶4, 38. The Settlement Class is estimated to include approximately 2,569 individuals. Borrelli Decl., ¶6.

### a.   The Settlement Satisfies the Criteria for Preliminary Approval

The court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of factors to be fully considered on final approval, namely that "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[]; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. Jan. 28, 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

The Second Circuit had developed its own list of factors for consideration prior to the 2018 revisions to Rule 23(e), finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102; *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41 (3d ed. 1995). In making this determination, Second Circuit Courts considered nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds)). In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiffs will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by Second Circuit Courts in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval and warrants preliminary approval so that notice can issue to the class.

### i.  The Settlement Warrants Preliminary Approval Under Rule 23(e).

#### 1.  The Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class.

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Settlement Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiffs have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Borrelli Decl. ¶4. Plaintiffs do not have any conflicts with the Settlement Class and have adequately represented Settlement Class Members in the litigation. *Id*.

Settlement Class Counsel has also adequately represented the class. As discussed herein at Section IV.b.i.4, below, Settlement Class Counsel has extensive experience in class action litigation generally, and data breach cases in particular. *See* Borrelli Decl, Ex. A. In negotiating the Settlement, Settlement Class Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not been completed prior to the Settlement being reached here, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (approving settlement where no formal discovery had taken place but the parties had "completed enough investigation to agree on a reasonable settlement); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotations omitted). "In fact, informal discovery designed to develop a

settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, at *6 (citing *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y. 1982)) ("Although little formal discovery has occurred, the parties freely exchanged data during settlement talks. In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged"). Here, Settlement Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant informal exchange of information in advance of mediation, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Borrelli Decl. ¶¶6-9. Accordingly, Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class and this factor weighs in favor of preliminary approval.

### 2. The Settlement is the product of serious, informed, and arm's-length negotiations.

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the

result of negotiations among experienced counsel and with considerable assistance from a well-respected mediator, Mr. Friedman. Borrelli Decl. ¶¶6-8. In the weeks leading up to the mediation, the parties exchanged key information needed to inform their strategies, including the size of the class, the types of data involved in the breach, and the number of individuals who enrolled in the credit monitoring offered by Diligent at the time it sent notice of the Security Incident. *Id*. ¶¶6-7. This allowed the parties to simultaneously agree on a general settlement structure prior to mediating with Mr. Friedman. *Id*. Mr. Friedman then assisted the parties in coming to resolution on all substantive terms of the Settlement. *Id.* ¶8. Throughout all negotiations, Settlement Class Counsel and counsel for Diligent fought hard for the interests of their respective clients. *Id*. Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. Borrelli Decl. ¶¶10, 16-18, and Exhibit A. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because they strongly indicate a lack of collusion in the final result. This factor weighs in favor of preliminary approval.

### 3. The Settlement has no obvious deficiencies and does not grant preferential treatment to any Settlement Class Members.

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits made available to Settlement Class Members as a result of this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated for their out-of-pocket costs, their time, and extraordinary losses resulting from fraud that they have suffered as a result of the Security Incident. Moreover, to prevent any additional harm from occurring and to protect from fraud, Settlement Class Members are entitled to additional credit monitoring. S.A. ¶¶11, 47-48.

The Settlement terms are consistent with, and in fact better than, agreements in other similar data breach cases, in the Southern District of New York and across the country. *See e.g., Baksh et al. v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### a.    The costs, risks, and delay of trial and appeal are great.

The benefits conferred by the Settlement are immediate and significant, and Settlement Class Counsel acknowledges that it is possible that the Settlement Class could receive nothing if the case is litigated to trial. Borrelli Decl. ¶¶10, 12. While Plaintiffs strongly believe in the merits of the case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. *See id*. Proceeding with litigation would open up Plaintiffs to the risk inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*.

For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB)(RLE), 2010 WL

2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same).

Plaintiffs also recognize the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Settlement Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation, 61 B.C. L. REV. 1223, 1235 (2020). As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### b.  The proposed method of distributing relief and processing claims is objective, efficient, and fair.

As described in detail in Section II.d.3, supra, the Settlement Administrator will be responsible for assessing claims and distributing relief. Borrelli Decl. ¶9. Settlement Class Members will have one-hundred twenty (120) days after the Notice Deadline to complete and submit a claim form. S.A. ¶¶7, 8, 49. The Settlement Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. S.A. ¶50. The procedure provided for by the Settlement Agreement is objective, efficient, and fair.

        **c.  The attorneys' fees, costs, and service awards that Plaintiffs will request from this Court are reasonable.**

By separate motion, Plaintiffs will seek Court approval of attorneys' fees in the amount of $100,000.00, costs and expenses in the amount of $8,000.00, and service awards for Plaintiffs in the amount of $2,500.00 to each Plaintiff. S.A. ¶¶73, 75. These requests are well within the range of those regularly accepted by Second Circuit courts. *See Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *30 (S.D.N.Y. Sep. 22, 2020) (in a claims based class settlement, awarding 51.75% of the total benefit to the class as attorneys' fees); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted). Plaintiffs will make their requests by separate motion at least fourteen (14) days prior to Settlement Class Members' deadline to Object to or Out-Out from the Settlement, the attorneys' fees, costs, and service awards sought clearly fall within the range of possible approval. S.A. ¶¶73, 75.

        **d.  No additional agreement related to the Settlement Exist**

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

        **4.  The Settlement Treats Class Members Equitably to Each Other.**

Further, the Settlement treats all Settlement Class members fairly and equally. Each Settlement Class Member is entitled to file a claim to obtain settlement benefits. Accordingly, and

because the Settlement Agreement meets all of the required criteria under Rule 23(e), preliminary approval should be granted.

### ii. *Grinnell* Factors

Prior to the revisions to Rule 23, the Second Circuit relied upon the nine factors set forth in *City of Detroit v. Grinnell Corp.* to guide its assessment of whether a class action settlement should be approved. 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds). While preliminary approval requires only an initial evaluation of the settlement and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

**First,** the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed supra, at Section IV.i.3.a., continued litigation is likely to be complex, long, and expensive. In fact, Defendant has already indicated its intention to file a Motion to Dismiss [Doc. 30], which Plaintiffs would have to survive to even begin litigation. Plaintiffs would then likely need to prevail on summary judgment and both gain and maintain class certification through appeal and trial. Additionally, the amount of data-expert analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

**Second,** the reaction of class members is not yet apparent. While the Settlement Class Representatives have reviewed and approved the Settlement Agreement, other Settlement Class Members have not yet had the same opportunity. As such, this factor is appropriately examined

after Notice has issued to Settlement Class Members and once they have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

**Third,** the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both sides to assess the claims and defenses at issue. Early settlement where the Parties are adequately informed to negotiate is to be commended. *Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30-31 (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). As discussed more fully above at Section IV.a.i.1, the Parties had more than enough information to adequately evaluate the claims and defenses at issue. As such, this factor weighs in favor of approval.

**Fourth, Fifth, and Sixth,** the risks of establishing liability, damages, and maintaining a class through appeal and trial weigh in favor of Settlement approval. Although Plaintiffs firmly believe in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id*. (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005)). While Plaintiffs remain confident in the strength of their claims, additional litigation leaves open the risk that they will be unable to

meet the burdens of establishing liability, proving causation and damages, and gaining and maintaining certification through trial. Thus, these factors weigh in favor of Settlement approval.

**Seventh,** the ability of Defendant to withstand a greater judgment is not at issue here. In fact, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co.*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

**Eighth and Ninth,** the Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation. The Settlement establishes up to $200,000 for the fulfillment of claims and provides Settlement Class Members up to $2,500 per person in monetary relief, along with up to two-years of credit monitoring. S.A. ¶¶45-48. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The *Grinnell* factors weigh in favor of approval of the Settlement—and certainly at least support preliminary approval. As such, this Court should grant Plaintiffs' motion and allow notice to issue.

### b.  Preliminary Certification of the Settlement Class is Appropriate

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche*

*Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Indeed, courts have been certifying similar nationwide settlement classes in data breach cases. *See, e.g., , McFarlane v. Altice USA, Inc.*, No. 20-cv-1297, Dkt. 94 (S.D.N.Y.) (granting

preliminary approval in data breach settlement); *In re Hudson's Bay Co. Data Security Incident Consumer Litig.*, No. 18-cv-8472, Dkt. 181 (S.D.N.Y.) (same); I*n re Equifax, Inc. Customer Data Security Breach Litig.*, MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), reversed on other grounds, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). Because the Settlement Class meets all requirements for certification under Rule 23, this Court should grant Plaintiffs' request.

### i. The Settlement Class satisfies the requirements of Rule 23(a).

#### 1. Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are approximately 2,569 individuals who are part of the Settlement Class. Borrelli Decl. ¶6. This large number of persons in the Settlement Class easily renders joinder impracticable. As such, the numerosity requirement is satisfied.

## 2.  Commonality

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, the commonality requirement is met because multiple common issues exist. For example, whether Diligent failed to adequately safeguard the records of its current and former employees who entrusted Diligent with their Personal Information, such as Plaintiffs and other Settlement Class Members is a question common across the entire Settlement Class. Diligent's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another. Other specific common issues include, but are not limited to:

- Whether Diligent had a duty to use reasonable care in safeguarding Plaintiffs' and the Settlement Class Members' Personal Information'
- Whether Diligent took reasonable measures to determine the extent of the Security Incident after discovering it;
- Whether Diligent's notice of data breach was reasonable.

These common questions, and others alleged in the Amended Complaint, are central to the causes of action brought here and will generate common answers. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3); *see also In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Security Incident at issue in the Amended Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. California Settlement Subclass members will be eligible for additional compensation based on the law of the State in which they reside—this does not destroy any Rule 23(a) factor.

Thus, Plaintiffs' claims are typical of the Settlement Class Members' claims and the typicality requirement is satisfied.

### 4. Adequacy

A representative plaintiff must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no conflict of interest between the class representatives and other members of the class;

and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out the same Security Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for credit monitoring and monetary relief.

Moreover, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Borrelli Decl. ¶¶10, 16-18, and Ex. A. They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to Settlement Class Members. Thus, the requirements of Rule 23(a) are satisfied.

### ii. The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### 1. Predominance

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance

requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb., 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)). Predominance is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen*, 262 F.R.D. at 159.

In this case, the key predominating questions are whether Diligent had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and Settlement Class Members, and whether Diligent breached that duty. The common questions that arise from Diligent's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues when evaluating nationwide settlements. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, Case No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably

protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## 2. Superiority

Second, the resolution of hundreds of claims in one action is far superior to litigation via individual lawsuits. Certification of the Settlement Class will increase judicial efficiency and conserve resources over the alternative of individually litigating hundreds of data breach cases arising out of the same Security Incident. Because the common questions of fact and law that arise from Diligent's conduct predominate over any individualized issues, and a settlement class is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

## c. The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For settlement classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably

calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via email and U.S. mail to the addresses Diligent has on record, and that it used to provide Settlement Class Members with initial notice of the Security Incident. *See* S.A. ¶¶40, 56.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. at 114. Second Circuit courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006).

The substance of the Notice here is designed to be clear and concise and inform Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *See* S.A. Exs. 1-3. As such, the proposed Notice Plan should be approved.

### d.  The Court Should Appoint the Settlement Administrator

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Angeion to serve as the Settlement Administrator. Angeion has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Borrelli Decl. ¶9.

### e.  The Court Should Appoint the Class Representatives

Plaintiffs should be provisionally appointed Class Representatives. As set forth above, they have represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the class. Their personal information, like the personal information of other Settlement Class Members, has been impacted in the same Security Incident, and, as a result, Plaintiffs have the same interests as the Settlement Class Members. *See* Borrelli Decl. ¶4. Moreover, Plaintiffs have capably represented the Settlement Class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*. Finally, Plaintiffs have been informed about the nature of a class action and the potential advantages and disadvantages by proceeding in a class action rather than individually. *Id*.

### f. The Court Should Appoint Settlement Class Counsel

Plaintiffs request appointment of Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Borrelli Decl. ¶¶10, 16-18, Ex. A.

## V.    CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiffs respectfully request that this Honorable Court enter an Order:

1) Preliminarily approving the Settlement;

2) Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

3) Appointing Angeion as Settlement Administrator;

4) Approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C) attached to the Settlement Agreement;

5) Appointing Fred Whelan, Jr. and Megan Ellis as Representatives of the Class;

6) Appointing Raina C. Borrelli of Turke & Strauss LLP as Settlement Class Counsel;

7) Scheduling a Final Fairness Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiffs' service awards to be held approximately 160 days after entry of the Preliminary Approval Order; and

8) Such other relief as the Court deems just and proper.

Dated:  June 26, 2023                    Respectfully submitted,

                                          By*:  /s/ Raina C. Borrelli*
                                             Raina C. Borrelli
                                             raina@turkestrauss.com
                                             TURKE & STRAUSS LLP
                                             613 Williamson St., Suite 201
                                             Madison, WI 53703
                                             Telephone (608) 237-1775
                                             Facsimile: (608) 509-4423

                                             James J. Bilsborrow (NY Bar # 519903)
                                             jbilsborrow@weitzlux.com
                                             WEITZ & LUXENBERG, PC
                                             700 Broadway
                                             New York, NY  10003
                                             Telephone: (212) 558-5500

                                             *Attorneys for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

*/s/ Raina C. Borrelli*
Raina C. Borrelli
