UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRED WHELAN and MEGAN ELLIS, on behalf of
themselves and all others similarly situated,

                                Plaintiffs,

                    -against-

DILIGENT CORPORATION,

                                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/4/2025_____

22 Civ. 7598 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, Fred Whelan and Megan Ellis, bring this class action against Defendant,
Diligent Corporation ("Diligent"), claiming negligence, breach of contract, data privacy
violations, and other related claims arising out of a hack of Diligent's computer systems that
compromised the personally identifiable information ("PII") of Diligent's employees. *See
generally* Am. Compl., ECF No. 33.

Having reached a settlement (the "Settlement") with Diligent, ECF No. 37-1, Plaintiffs
seek an order (1) preliminarily approving the Settlement; (2) conditionally certifying a
proposed settlement class and subclass under Federal Rule of Civil Procedure 23(a) and (b);
(3) appointing Plaintiffs as representatives of, and their attorneys as class counsel to, the class;
(4) appointing Angeion Group ("Angeion") to serve as the settlement administrator;
(5) approving the content, and directing the distribution, of the notices of settlement and claim
form (collectively, the "Notice"); and (6) scheduling a fairness hearing. Mem. at 32, ECF
No. 37. Diligent, which denies Plaintiffs' allegations and disclaims liability, does not oppose
Plaintiffs' motion for preliminary approval. *See* Settlement at 1.

For the reasons stated below, Plaintiffs' motion is GRANTED.

**BACKGROUND**

Plaintiffs allege that Diligent, a software company, was hacked by cybercriminals on or around May 21, 2022. Am. Compl. ¶¶ 1–2. During the hack, the cybercriminals stole the PII of over 1,100 current and former Diligent employees. *Id.* ¶ 2. Plaintiffs claim that, as a result of the breach, employees whose PII were compromised now have a heightened risk of fraud and identity theft, and many of them have been forced to take steps to monitor their financial accounts and incur out-of-pocket expenses to detect and deter identity theft. *Id.* ¶¶ 10–13. According to Plaintiffs, Diligent had common law, statutory, and/or contractual duties to protect its employees' PII and to notify employees of the data breach, and Diligent breached those duties by failing to take reasonable steps to prevent, detect, or stop a data breach like the hacking at issue and by failing to timely notify employees of the breach once it occurred. *See id.* ¶¶ 4, 6–7, 81–88, 90–95, 102–07, 123. Diligent denies Plaintiffs' allegations. Settlement at 1.

Plaintiffs filed their lawsuit in September 2022. ECF No. 1. Over several weeks in early 2023, the parties negotiated a settlement agreement with the assistance of independent mediator Bruce Friedman of JAMS. Mem. at 4. The resulting Settlement provides for a "Settlement Class" consisting of all individuals, or their respective successors or assigns, who reside in the United States and whose PII was impacted by the data breach, as well as a "California Settlement Subclass" consisting of all Settlement class members who resided in California on May 23, 2023. *Id.* Under the Settlement, Diligent agrees to pay up to $200,000 to a common fund that will be used to reimburse class members for any out-of-pocket costs that are "fairly traceable" to the data breach, as well as time spent monitoring accounts, up to $500 per class member. *Id.* at 5–6; Settlement ¶ 45(b)–(c). Class members are also eligible to receive up to $2,500 in reimbursement for monetary losses that were "more likely than not" caused by the data breach.

Settlement ¶ 45(a).  Members of the California Settlement Subclass are entitled to an additional $50 payment, subject to the $500 cap on out-of-pocket expenses, as consideration for releasing their California-specific legal claims against Diligent.  *See id.* ¶ 45(d); ECF No. 40 at 1–2.  All class members will be entitled to receive free credit monitoring services and at least $1,000,000 in identity theft insurance coverage, which will be provided by Diligent separate from, and in addition to, the direct payments described above.  Settlement ¶ 47–48.

After the parties finalized and executed the Settlement in June 2023, Plaintiffs filed the instant motion for preliminary approval.  Mem. at 4; ECF Nos. 36–38.  Plaintiffs noted that, if the Settlement received preliminary approval, they intended to move for an award of up to $100,000 in attorney's fees and $8,000 in costs, as well as service awards for the named Plaintiffs totaling $5,000, all of which would be paid by Diligent outside of the common fund.  Mem. at 7–8.

In December 2023, the Court ordered supplemental briefing to address issues related to the California Settlement Subclass, the adequacy of the Settlement terms, and the reasonableness of Plaintiffs' anticipated requests for attorney's fees and service awards.  ECF No. 39.  Plaintiffs filed their first supplemental brief on January 22, 2024, ECF No. 40, and a second supplemental letter brief on September 12, ECF No. 41.  By order dated February 24, 2025, the Court directed Plaintiffs to file additional briefing on the application of Rule 23 to the California Settlement Subclass, ECF No. 44, which Plaintiffs filed on March 7, ECF No. 45.

## DISCUSSION

I.    Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement.  Settlement approval typically occurs in two stages: (1) preliminary approval, when

"prior to notice to the class, a court makes a preliminary evaluation of fairness;" and (2) final approval, when "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (alteration in original) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016)); *see also* Fed. R. Civ. P. 23(e). Even at the preliminary approval stage, the Court's role in reviewing the proposed settlement "is demanding because the adversariness of litigation is often lost after the agreement to settle." *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016) (citation omitted). The Court must consider whether it will likely be able to (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for purposes of judgment on the proposal." *In re Payment Card*, 330 F.R.D. at 28 (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)).

II.    Likelihood of Approval Under Rule 23(e)(2)

At the preliminary approval stage, the Court must assess "whether it is 'likely' [that] it will be able to finally approve the settlement after notice, an objection period, and a fairness hearing." 4 *Newberg and Rubenstein on Class Actions* § 13:10 (6th ed.) (citation omitted). To approve a proposed settlement, the Court must find "that it is fair, reasonable, and adequate" after considering four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2); *see In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).[1]

---

[1] Before the 2018 amendments to Rule 23, the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under the nine factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The Advisory

A.  Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and

class counsel have adequately represented the class."  Determining adequacy typically entails

inquiring into whether (1) the representative plaintiffs' interests are antagonistic to the interests

of other class members, and (2) the representative plaintiffs' attorneys are qualified, experienced,

and able to conduct the litigation.  *In re GSE Bonds*, 414 F. Supp. 3d at 692.  Plaintiffs, Fred

Whelan and Megan Ellis, seek to be appointed as co-representatives of the Settlement Class.

Mem. at 32.  Ellis also seeks to be appointed as the California Settlement Subclass' sole

representative.  ECF No. 40 at 5.  Plaintiffs seek the appointment of their attorney, Raina C.

Borrelli of Strauss Borrelli PLLC, as "Class Counsel" to the Settlement Class and the California

Settlement Subclass.  *See* Mem. at 32.

Plaintiffs' interests are not antagonistic to the interests of the putative class members they

seek to represent.  *See, e.g.*, *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at

*2 (S.D.N.Y. May 9, 2012).  The harms that Plaintiffs allege to have experienced and their

interests in pursuing the remedies sought in this action are substantially the same as those of all

other class members.  *See* Borrelli Decl. ¶ 4, ECF No. 38.  Although Ellis is a member of both

the Settlement Class and California Settlement Subclass and seeks to represent both, Whelan is

not a member of the Subclass.  *See* Am. Compl. (raising the California claims on behalf of Ellis

and the California Settlement Subclass only); ECF No. 40.  Accordingly, both the Settlement

Class and the Subclass will have representatives who are uniquely capable of advocating for their

interests, and Plaintiffs and their attorneys may be appointed as representative plaintiffs and

---

Committee Notes to the 2018 amendments to Rule 23 state that the new Rule 23 factors were not intended to displace the *Grinnell* factors but to focus the Court on the "core concerns of procedure and substance."

Class Counsel without posing a "fundamental" conflict of interest.  *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 Civ. 6221, 2024 WL 5004632, at *8 (S.D.N.Y. Dec. 6, 2024) ("Where no fundamental conflict exists, the same class representatives and counsel may represent multiple classes or subclasses in the same class action.").  Plaintiffs have shown their commitment to the representative role by reviewing and approving pleadings, answering inquiries, and consulting with their attorneys throughout the litigation and mediation. *See* Borrelli Decl. ¶ 4; ECF No. 40 at 13–14.  For its part, Class Counsel has more than ten years of experience representing plaintiffs in complex class actions, including data privacy actions such as this one.  *See* Borrelli Decl. ¶¶ 10, 18.  The work that Class Counsel has performed in the case to date demonstrates that Counsel has committed sufficient resources to the litigation and is able to fairly and adequately represent the interests of the Settlement Class and Subclass.

Accordingly, the adequacy-of-representation factor weighs in favor of approval.

### B.  Arm's-Length Negotiations

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length."  *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (explaining that arm's-length negotiations support approving a settlement); *see also In re GSE Bonds*, 414 F. Supp. 3d at 693 (noting that "a mediator's involvement in settlement negotiations can help demonstrate their fairness").

This factor also weighs in favor of approval.  After engaging in early discovery, the parties spent approximately six months negotiating the Settlement through arm's-length negotiations with the assistance of a private mediator from JAMS.  Borrelli Decl. ¶¶ 6–9; Mem. at 4, 16.  The parties communicated their positions through the mediator, who helped the parties

independently evaluate the strengths and weaknesses of their claims and defenses.  Borrelli Decl.

¶ 8.  From the start, the parties agreed that they would not negotiate any matter related to

attorney's fees or service awards until they reached an agreement in principle on the core terms

of the Settlement.  *Id.*  Throughout all negotiations, counsel for all sides zealously advocated for

their clients' positions.  *Id.*

The Court finds, therefore, that the Settlement is the result of arm's-length, good faith

negotiations involving a credentialed mediator and experienced and independent counsel for all

parties.

### C.  Adequacy of Relief

The Court is also required to consider whether relief for the class is adequate, taking into

account the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method of
> processing class-member claims; (iii) the terms of any proposed award of attorney's
> fees, including timing of payment; and (iv) any agreement required to be identified
> under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  This inquiry overlaps in part with the *Grinnell* factors, which the

Court must also consider.  *See* Advisory Comm. Note to 2018 Amend., Fed. R. Civ. P. 23(e)(2).

Each of the Rule 23(e)(2)(C) and *Grinnell* factors favors preliminary approval here.

First, the Settlement would avoid significant costs, risks, and delay, ensuring timely relief

for class members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *City of Detroit v. Grinnell*, 495 F.2d 448,

463 (2d Cir. 1974) (noting that the Court considers "the complexity, expense and likely duration

of the litigation" and "the stage of the proceedings and the amount of discovery completed"); *see

also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000),

*aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  The parties have

engaged in meaningful discovery, *see* Borrelli Decl. ¶ 6, are well equipped to evaluate the strengths and weaknesses of their arguments, *see id.* ¶ 8, and "had an adequate appreciation of the merits of the case before negotiating," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted). Continued litigation could require expert analysis related to causation and an individualized assessment of damages for more than 2,500 class members, stretching out over multiple years. *See* Borrelli Decl. ¶¶ 10, 12; *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 WL 2492977, at *4 (S.D.N.Y. Mar. 14, 2023); *Grinnell*, 495 F.2d at 463 (noting that the Court considers "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial").

Second, Plaintiffs' proposed method of relief distribution is effective, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii), and it will ensure "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund," *In re Credit Default Swaps Antitrust Litig.*, No. 13 Md. 2476, 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). The parties have agreed to utilize Angeion, an experienced class action administrator, as the independent administrative entity that will verify class members' claims, distribute relief, and process objections and opt-outs. Settlement ¶¶ 37, 49–51, 60; Borrelli Decl. ¶ 9. The Notice, which is designed to facilitate participation by providing a website with information about the Settlement, will be mailed or emailed to all class members shortly after preliminary approval is granted. *See* Settlement ¶¶ 56–58. Because class members are either current or former Diligent employees, the mailing and email addresses Diligent has on file should be substantially up to date and Angeion will use reasonable efforts to reach class members in the event the Notice or payment is returned as undeliverable. *See id.* ¶¶ 53, 57. Diligent has agreed to pay the costs of Settlement administration, including the cost of distributing the Notice, up to $85,000, and such

costs will be paid by Diligent outside of the Settlement fund available to class members. *See id.* ¶ 59. This process is efficient, effective, and equitable.

Third, the Settlement's approach to attorney's fees is not unreasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the Settlement, Plaintiffs may apply for an award of Class Counsel's fees and costs, which, if awarded, would be paid by Diligent outside of the Settlement fund. Settlement ¶ 76; Mem. at 7. Accordingly, Plaintiffs' contemplated request for attorney's fees does not weigh against preliminary approval.

Fourth, the parties have not identified "any agreement required to be identified under Rule 23(e)(3)" that warrants the Court's consideration at this stage. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv); Mem. at 19.

Fifth, the Court considers the adequacy of relief. *See Grinnell*, 495 F.2d at 463 (noting that the Court considers "the ability of the defendants to withstand a greater judgment," "the range of reasonableness of the settlement fund in light of the best possible recovery," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation").[2] Plaintiffs estimate that the maximum total value of the identity theft monitoring service and insurance included within the Settlement is about $369,000. *See* ECF No. 40 at 11. They further estimate that the cost of claims administration will total approximately $32,000. *Id.* Assuming that all $200,000 of the Settlement fund is exhausted and Plaintiffs are awarded up to $100,000 in attorney's fees, $8,000 in costs, and $5,000 in service awards, the total potential value of the Settlement is $714,000. *See id.* There is no evidence that

---

[2] The Court does not consider the second *Grinnell* factor, which requires the Court to evaluate the "reaction of the class to the settlement," *Grinnell*, 495 F.2d at 463, because consideration of this factor is premature at the preliminary approval stage, *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

Diligent could or could not withstand a greater judgment but, even if it could, that fact, "standing alone, [would] not suggest that the [S]ettlement is unfair." *In re Austrian & German Bank*, 80 F. Supp. 2d at 178 n.9.  Considering class members' best possible recovery in light of all attendant risks of litigation, the Settlement is fair and reasonable.  *Cf. Times v. Target Corp.*, No. 18 Civ. 2993, 2019 WL 5616867, at *2 (S.D.N.Y. Oct. 29, 2019).  Each Settlement Class member will receive up to $500 as reimbursement for out-of-pocket costs and time spent monitoring accounts; up to $2,500 in reimbursement for actual monetary losses suffered because of the breach; and free credit monitoring services and identity theft insurance coverage of at least $1,000,000. Mem. at 5–7.  California Settlement Subclass members will be entitled to an additional $50, subject to the $500 cap on reimbursement for out-of-pocket costs.  *Id.* at 6.  Given the legal hurdles that class members could face if they were required to litigate their claims through trial—including the issue of proving causation and damages—the relief contemplated by the Settlement is reasonable and carefully targeted to address the harms alleged by Plaintiffs in their complaint.  It is also comparable to the relief afforded class members in other data breach class action settlements in this District and around the country.  *See* Mem. at 17 (collecting cases); ECF No. 40 at 6–8 (same); ECF No. 41 at 1–2 (same).

Accordingly, the Court finds that the adequacy-of-relief factor also weighs in favor of preliminary approval.

D.  Equitable Treatment of Class Members

Lastly, Rule 23(e)(2)(D) requires the Court to consider whether the Settlement "treats class members equitably relative to each other."  Under the Settlement, all class members are entitled to the free credit monitoring and identity theft insurance.  *See* Settlement ¶ 47.  Any additional awards that class members receive will be based on verified claims of monetary loss

10

and out-out-pocket expenses, both of which must be supported by documentation, and claims of

lost time, which do not require documentation.  *See id.* ¶ 45.  California Settlement Subclass

members are entitled to claim an additional $50, subject to the $500 out-of-pocket cap, as

compensation for releasing the California state law claims that only they may raise.  *Id.* ¶ 45(d);

*see* ECF No. 40 at 1.  In sum, the formulas for allocating awards among class members turn on

objective, ascertainable, and fair characteristics, such as class members' verified harms and their

available causes of action.  Additionally, any service award paid to Plaintiffs will be paid outside

of the Settlement fund.  Mem. at 7; Settlement ¶ 74.  Accordingly, the Court finds that the

Settlement treats class members equitably relative to each other and, as such, the final Rule

23(e)(2) factor also weighs in favor of preliminary approval.

  The Court thus finds that, after notice, an objection and opt-out period, and a fairness

hearing, it will likely be able to approve the Settlement under Rule 23(e)(2).

### III. Likelihood of Class Certification

  To preliminarily approve the Settlement, the Court must also find that it will likely be

able to certify the class for purposes of judgment on the Settlement.  *In re Payment Card*, 330

F.R.D. at 28.  A court may certify a class for settlement purposes when the proposed class meets

the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule

23(b)—in this case, Rule 23(b)(3).  *In re GSE Bonds*, 414 F. Supp. 3d at 700.  Rule 23(a)

requires that a class satisfy (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation.  Rule 23(b)(3) requires that common questions of law or fact "predominate over

any questions affecting only individual members, and that a class action [be] superior to other

available methods for fairly and efficiently adjudicating the controversy."  "When exercising its

discretion to certify [a subclass], a court must assure itself that [the] subclass independently

meets the requirements of Rule 23." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362

(S.D.N.Y. 2014); *see Williams v. Wallace Silversmiths, Inc.*, 566 F.2d 364, 365 (2d Cir. 1977).

A.  Rule 23(a)

First, the Settlement Class and California Settlement Subclass likely satisfy Rule 23(a)'s

numerosity requirement.  In the Second Circuit, courts presume numerosity at a level of forty or

more class members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Plaintiffs estimate, based on materials disclosed in discovery, that that the Settlement Class

contains at least 2,500 individuals.  Mem. at 12; Borrelli Decl. ¶ 6.  Of those class members,

approximately 1,000 are members of the California Settlement Subclass.  ECF No. 45 at 2.

Accordingly, numerosity is likely satisfied.

Second, the Settlement Class and California Settlement Subclass likely satisfy the

commonality requirement.  Commonality requires that the action present at least one question

capable of generating a "common answer[] apt to drive the resolution of the litigation."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted) (citation omitted).

The commonality standard does "not mandate that the claims of the lead plaintiff be identical to

those of all other plaintiffs."  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y.

2008).  Rather, it "require[s] that plaintiffs identify some unifying thread among the members'

claims that warrants class treatment."  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156

(S.D.N.Y. 2008) (alteration adopted) (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212

F.R.D. 144, 153 (S.D.N.Y. 2002)).  Plaintiffs have done so here.  They allege that Diligent failed

to adequately safeguard the PII of its current and former employees and failed to timely notify

employees whose PII was comprised by the data breach.  *See generally* Am. Compl.  In other

words, Plaintiffs allege conduct by Diligent that raises questions apt to generate common

answers, including those related to Diligent's duty of care and whether it acted reasonably under the circumstances. Mem. at 25–26. These questions apply equally to the Settlement Class and the California Settlement Subclass, and the Subclass raises additional common questions as to whether Diligent's conduct violated California law. ECF No. 45 at 2. Accordingly, Plaintiffs are likely to satisfy the commonality requirement. *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *Dukes*, 564 U.S. at 353.

Third, the typicality requirement is likely satisfied because Plaintiffs' claims "arise[] from the same course of events" as the other class members' claims, and each class member would "make[] similar legal arguments to prove [Diligent's] liability." *Giuliani*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Diligent subjected Plaintiffs and the various members of the proposed Class and Subclass to the same alleged misconduct. Any "minor variations in the fact patterns underlying individual claims," such as the extent of a class member's damages, do not defeat typicality. *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Fourth, Plaintiffs are likely to satisfy the adequacy requirement for the reasons discussed above. *See supra* Section II.A.

### B. Rule 23(b)(3)

The Settlement Class and California Settlement Subclass are also likely to satisfy Rule 23(b)(3)'s predominance and superiority requirements. The predominance standard is "more demanding" than the commonality requirement of Rule 23(a). *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 462 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)). A proposed class satisfies the predominance requirement "if resolution of some of the legal or factual questions that qualify

13

each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re LIBOR*, 299 F. Supp. 3d at 462 ("The predominance requirement calls only for predominance, not exclusivity, of common questions." (alteration omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006))). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

For both the Class and Subclass, Diligent's liability as to each of Plaintiffs' legal claims "can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139. All Class and Subclass members are unified by common legal theories of liability tied to common facts related to Diligent's efforts to safeguard employees' PII and its response to the data breach. *See McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Accordingly, the Court concludes that "common, aggregation-enabling[] issues in the case [likely] are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation omitted).

The Court also finds that, due to the large size of the classes and the desirability of concentrating litigation in a single forum, *see* Fed. R. Civ. P. 23(b)(3), "the class action device [is likely] superior to other methods available for a fair and efficient adjudication of th[is]

14

controversy," *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Because the class

certification request is made in the context of settlement only, the Court need not address the

issue of manageability.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

      For all of the reasons stated, the Court provisionally certifies the Settlement Class and the

California Settlement Subclass for the purposes of settlement, notice, and award distribution

pursuant to Rules 23(c) and 23(e).

### IV.    Appointment of Class Representatives and Class Counsel

      Plaintiffs Fred Whelan and Megan Ellis are provisionally appointed as representatives of

the Settlement Class; Megan Ellis is also provisionally appointed as representative of the

California Settlement Subclass; and the law firm Strauss Borrelli PLLC is provisionally

appointed as Class Counsel.  *See supra* Section II.A.

### V.    Notice Approval

      Because the Court will likely approve the Settlement and certify the settlement classes

under Rule 23(e), "[t]he [C]ourt must direct notice in a reasonable manner to all class members

who would be bound by the [Settlement]."  Fed. R. Civ. P. 23(e)(1)(B).  When, as here, notice is

to be provided to a settlement class that is proposed to be certified under Rule 23(b)(3), the Court

"must direct to class members the best notice that is practicable under the circumstances."  Fed.

R. Civ. P. 23(c)(2)(B).  Notice may be made by "United States mail, electronic means, or other

appropriate means."  *Id.*  "The standard for the adequacy of a settlement notice in a class action

under either the Due Process Clause or the Federal Rules is measured by reasonableness."

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005), *superseded on other*

*grounds by Moses*, 79 F.4th at 243.  The settlement notice must "fairly apprise the prospective

members of the class of the terms of the proposed settlement and of the options that are open to

them in connection with the proceedings." *Id.* at 114 (quoting *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982)).

Having reviewed the Notice, the Court concludes that it satisfies the reasonableness standard and complies with the requirements of due process and Rule 23(c)(2)(B). *See* Notice, ECF No. 37-1 Ex. 1 (short-form notice for mailing), Ex. 2 (long-form notice for website), and Ex. 3 (claim form). The Notice is written in plain language and organized clearly. *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010). It fairly, plainly, accurately, and reasonably informs class members of appropriate information about the nature of this litigation, the Settlement Class and Subclass, the identity of Class Counsel, the essential terms of the Settlement, the benefits available to each class member, and how class members may submit a claim, object to the Settlement, and opt out. It contains appropriate information about Class Counsel's forthcoming applications for attorney's fees and other payments, as well as appropriate information about Plaintiffs' forthcoming applications for service awards for class representatives. The Notice also contains helpful information about the Court's procedures for final approval of the Settlement and instructions as to how to obtain additional information regarding this litigation and the Settlement.

Further, the plan for distributing the Notice appears to be reasonably calculated to reach all class members who would be bound by the Settlement. The settlement administrator will mail and/or email the Notice to class members, create and administer a website and telephone line, take reasonable steps to obtain correct mailing and email addresses for class members whose Notice is returned as undeliverable, and attempt re-mailings for those class members. Settlement ¶¶ 53, 57–58, 62. The Court concludes, therefore, that the proposed plan for distributing the Notice will provide the best notice practicable under the circumstances,

16

satisfying the notice requirements of Rule 23(e) and all other legal and due process requirements.

Accordingly, the Notice is approved, the parties are authorized to retain Angeion as the settlement administrator to implement the terms of the Settlement, and Angeion is directed to distribute the Notice pursuant to the procedures outlined in the Settlement.[3]

VI.    Procedures Related to the Fairness Hearing

The Court hereby schedules a fairness hearing for **September 15, 2025**, at **10:00 a.m.** to determine, among other things, whether: (1) the Settlement Class and California Settlement Subclass should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23(a) and (b); (2) the Settlement should be approved as fair, reasonable, and adequate, and finally approved pursuant to Rule 23(e); (3) this action should be dismissed with prejudice pursuant to the Settlement; (4) members of the Settlement Class and Subclass should be bound by the releases set forth in the Settlement; (5) Plaintiffs' application for an award of attorney's fees, costs, and expenses should be granted; and (6) Plaintiffs' application for service awards should be granted.  The hearing will take place in Courtroom 15D of the United States Courthouse, 500 Pearl Street, New York, New York 10007.  Not later than **fourteen days** before the fairness hearing, Plaintiffs shall file a motion for final approval of the Settlement.

The Notice sets forth the procedures pursuant to which class members may exclude themselves from, *i.e.*, "opt out of," the Settlement.  Any class member who wishes to opt out of the Settlement must individually sign and timely submit a written request to the designated address established by the settlement administrator in the manner provided in the Notice.  The written request must clearly manifest the person's intent to be excluded from the Settlement and

---

[3] The Court authorizes the settlement administrator to make non-material modifications to the Notice in consultation and agreement with the parties, without further order of the Court.

must be submitted individually—*i.e.*, one request is required for every class member seeking exclusion.  To be effective, such requests for exclusion must be postmarked no later than ninety days after the date of this order (the "Opt Out and Objection Deadline").  Within seven days after the Opt Out and Objection Deadline, the settlement administrator shall furnish to Class Counsel and counsel for Diligent a complete list of all timely and valid requests for exclusion.[4]

If the Court grants final approval to the Settlement and enters judgment accordingly, all persons falling within the definition of the Settlement Class who do not timely and validly opt out of the Settlement shall be bound by the terms of the Settlement and the Court's final approval order and judgment.  All class members who submit valid and timely requests to be excluded from the Settlement shall not receive any cash benefits from or be bound by the terms of the Settlement.

The Notice also sets forth the procedures pursuant to which class members may comment on or object to the terms of the Settlement.  The Notice shall instruct class members to file their objections with the Clerk of Court.  Any objection to the Settlement must be in writing and must include all of the following: (1) the name of this case, *Whelan v. Diligent*, No. 22 Civ. 7598; (2) the class member's full name, current mailing address, and telephone number; (3) a statement that explains with specificity the grounds for the objection, as well as any documents supporting the objection; (4) a statement as to whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (5) the identity of and contact information for any attorneys representing the objector; (6) a statement as to whether the class member (or their attorney) intends to appear at the fairness hearing; (7) a list of all other

---

[4] The settlement administrator shall retain the originals of all opt out requests and, for any requests sent by mail, originals of all envelopes accompanying opt-out requests, in its files until such time as the settlement administrator is relieved of its duties and responsibilities under the Settlement.

cases in which the objecting class member and/or their attorney has lodged an objection to a class action settlement; and (8) the signature of the class member or their attorney. To be timely, any objection must be filed with the Clerk of Court in writing by the Opt Out and Objection Deadline.

Any Settlement Class member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement, shall be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in this action, and shall be precluded from seeking any review of the Settlement and/or final approval order and judgment, if any, by appeal or other means. Any challenge to the Settlement, the final order approving the Settlement, or the judgment to be entered upon final approval, if any, shall be pursuant to an appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

Plaintiffs shall file their application for an award of attorney's fees, costs, and service payments no later than **fourteen days** prior to the Opt Out and Objection Deadline. *See* Settlement ¶ 75. The Court will consider and rule on any application for attorney's fees, costs, and service payments, as well as any opposition to such application, at the fairness hearing.

Pending the outcome of the fairness hearing, all class members are temporarily enjoined from commencing, prosecuting, or maintaining any claim already asserted in, and encompassed by, this lawsuit, and all class members (including those who request exclusion from the Settlement) are temporarily enjoined from commencing, prosecuting, or maintaining in any court or forum other than this Court any claim, action, or other proceeding that challenges or seeks review or relief from any order, judgment, act, decision, or ruling of the Court in connection with the Settlement or otherwise in connection with this lawsuit. No statute of limitations shall run

against any such claims during the pendency of this temporary injunction.

If, at the fairness hearing, the Court grants final approval of the Settlement, Plaintiffs and each individual class member who does not timely and validly opt out of the Settlement will release their claims, by operation of this Court's entry of the judgment and final approval, as described in the Settlement.

<strong>CONCLUSION</strong>

For the foregoing reasons, the motion at ECF No. 36 is GRANTED. A fairness hearing shall take place on **September 15, 2025**, at **10:00 a.m.** in Courtroom 15D of the United States Courthouse, 500 Pearl Street, New York, New York 10007. All pending deadlines are stayed other than those related to approval and administration of the Settlement.

SO ORDERED.

Dated: April 4, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge