**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRED WHELAN and MEGAN ELLIS, on behalf of themselves and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>v.<br><br>DILIGENT CORPORATION,<br><br>                                  Defendant. | Case No. 1:22-cv-07598<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     THE SETTLEMENT ............................................................................................ 2

III.    BACKGROUND ................................................................................................... 3

  A.    Defendant's Data Breach and Plaintiffs' Claims................................................ 3

  B.    Arms'-length Negotiations & Preliminary Approval.......................................... 4

  C.    Notice Program & Claims Activity..................................................................... 4

IV.     ARGUMENT ........................................................................................................ 6

  A.    The Court Should Approve the Settlement Under Rule 23 and the Grinnell Factors......... 6

    1.   Plaintiffs and Plaintiffs' counsel represented the Settlement Classes "adequately" ....... 8

    2.   The Court should presume the Settlement is "approvable" .......................................... 10

    3.   The Settlement's relief is "adequate" considering this case's complexity and risks and the relief the Settlement achieves ................................................................ 12

      i.    The costs, risks, and delay of trial and appeal.......................................................... 12

      ii.   The effectiveness of the proposed method of distributing relief to the Settlement Classes ................................................................................. 14

      iii.  The terms of any proposed award of attorney's fees, including timing ................... 17

      iv.   Any agreement required to be identified under Rule 23(e)(3) ................................. 18

    4.   The Settlement treats Settlement Class Members equitably and is within the "range of reasonableness"............................................................................... 18

    5.   The Settlement Classes' reaction to the Settlement ..................................................... 21

  B.    The Court Should Certify the Settlement Class and California Settlement Subclass for Settlement Purposes ......................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
  464 F.3d 328 (2d Cir. 2006) ..................................................................................... 15

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................... 17

*Castagna v. Madison Square Garden, L.P.,*
  No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ........... 11

*Charron v. Pinnacle Group N.Y. LLC,*
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................................................................... 14

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ............................................................................... passim

*Cohen v. J.P. Morgan Chase & Co.,*
  262 F.R.D. 153 (E.D.N.Y 2009) ............................................................................... 6, 7

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ...................................................................................... 22

*Currie v. Joy Cone Co.,*
  No. 2:23-CV-00764-CCW, 2024 U.S. Dist. LEXIS 111294 (W.D. Pa. June 25, 2024) ........... 19

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2007) ...................................................................................... 11

*Desue v. 20/20 Eye Care Network, Inc.,*
  No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355 (S.D. Fla. July 8, 2023) ........... 6, 13

*Dornberger v. Metropolitan Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................... 17

*Fulton-Green v. Accolade, Inc.,*
  No. 18-274, 2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ................................... 13

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968) ...................................................................................... 22

*Hammond v. The Bank of N.Y. Mellon Corp.,*
  No. 08 Civ. 6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ..... 13

*Hart v. BHH, LLC,*
  No. 15cv4804, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ............................. 17

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................. 10, 20

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................... 22

*In re Canon United States Data Breach Litig.*,
    No. 20-CV-6239-AMD-SJB, 2024 U.S. Dist. LEXIS 138499 (E.D.N.Y. Aug. 5, 2024) ......... 19

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409 (W.D. Ky. Aug. 23, 2010)................ 6, 13

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13 Md. 2476,  2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. Apr. 25, 2016) ......................... 16

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d
    Cir. 2010) ............................................................................................................. 10

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ...................................................................................... 23

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ......................................................................... 10

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................................... 8, 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) .................................................................................... 13

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
    No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) ............. 8, 19

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................. 6

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ........................ 11

*In re Luxottica Group S.p.A. Secs. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006)................................................................................. 6

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................................. 6

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977)................................................................................... 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 22

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ................... 13

*In re Telik*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 17

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ................................................................. 13

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ................................................................. 24

*Kostka v. Dickey's Barbecue Rests., Inc.*,
   No. 3:20-cv- 03424-K, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022) ................ 21

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 21

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................. 23

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................. 22

*Reynolds v. Marymount Manhattan Coll.*,
   No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993 (S.D.N.Y. Oct. 23, 2023) ............. 20

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331-CM-MHD, 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) ........ 10

*Soler v. Fresh Direct, LLC*,
   No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023) ............... 7, 8

*Stollenwerk v. TriWest Healthcare All.*,
   No. CV–03– 0185–PHX–SRB (D. Ariz. June 10, 2008) ......................................... 13

*Torretto v. Donnelley Fin. Sols., Inc.*,
   No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440 (S.D.N.Y. Jan. 5, 2023) ................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................. 14

*Willix v. Healthfirst, Inc.*,
   No. 07–cv–1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ........................... 11

**Other Authorities**

*Manual for Complex Litigation, Fourth* (2004) ............................................................................ 7

**Rules**

Federal Rules of Civil Procedure, Rule 23 ...................................................... 12, 16, 22

## I.    INTRODUCTION

The Court should approve the Parties' Settlement under Rule 23. The Court preliminarily approved the Settlement on April 4, 2025, finding that it was "fair, reasonable, and adequate" after considering the relevant factors under Fed. R., Civ. P. 23(e). ECF No. 46, Order Granting Preliminary Approval, at 4-11. Since the Court entered the Preliminary Approval Order, Notice has been disseminated to 91.5% of the Settlement Class, 141 claims have been filed (with the Claim Deadline extending until September 2, 2025), and one individual requested exclusion. Declaration of Stephanie Saunders of Angeion Group ("Edwards Decl."), at ¶¶ 16, 24-26. This Court should finally approve the Settlement.

This case arises out of a data breach on or around May 21, 2022, where personal information pertaining to approximately 2,500 of Defendant Diligent Corporation's current and former employees was impacted, which Plaintiffs alleged exposed them and Settlement Class Members to harm. ECF No. 33, Amended Complaint, at ¶¶ 1–2; ECF No. 38, R. Borrelli Decl. in Support of Motion for Preliminary Approval at ¶ 6. Plaintiffs claim that Diligent breached its common law, statutory, and contractual duties by failing to take reasonable steps to prevent, detect, or stop the data breach and by failing to timely notify employees of the breach once it occurred. ECF No. 33 at ¶¶ 4, 6–7, 40, 49, 81–88, 90–95, 102–07, 123.

After a lengthy and vigorous period of negotiations lasting several weeks in early 2023, the Parties negotiated a Settlement Agreement with the assistance of independent mediator Bruce Friedman of JAMS. ECF No. 37, Plaintiffs' Memo in Support of Preliminary Approval, at 4. Under the Settlement Agreement, Diligent will pay up to $200,000 in direct benefits to Settlement Class Members, who are eligible to recover compensation for up to $500 of ordinary out-of-pocket expenses, up to $2,500 in extraordinary out-of-pocket expenses, $20 per hour for up to three hours

of lost time, and, in addition to these benefits, a $50 cash payment to California Settlement Subclass Members subject to the $500 cap of ordinary expenses. ECF No. 37-1, Settlement Agreement, at ¶¶ 45-46. Diligent will also provide one year of three-bureau credit monitoring protection if the Settlement Class Member previously enrolled in the credit monitor services offered by Diligent, or two years if they did not. *Id.* at ¶ 47. Separate from the $200,000 direct benefits to the Settlement Class Members, Diligent agreed to pay $100,000 for attorneys' fees; up to $8,000 for reimbursement of reasonable litigation expenses; and $2,500 for service awards per Plaintiff ($5,000 total), and all costs of notice and claims administration. The Settlement Class has reacted positively to this Settlement, with 141 claims filed to-date, and only one request for exclusion. Saunders Decl., ¶¶ 17, 24-26. As a result, the Settlement satisfies Rule 23(e) and should receive final approval.

## II.    THE SETTLEMENT

The Settlement Agreement provides for excellent benefits on behalf of a "Settlement Class" consisting of all individuals, or their respective successors or assigns, who reside in the United States and whose data was impacted by the data breach, as well as a California Settlement Subclass consisting of all Settlement Class Members who resided in California on May 23, 2023. ECF 37-1 at ¶¶ 4, 38. Specifically, the Settlement provides four key benefits to all Settlement Class Members: (1) payments up to $2,500.00 in extraordinary out-of-pocket expenses "more likely than not caused by" the data breach; (2) payments up to $500.00 in ordinary out-of-pocket expenses that are "fairly traceable" to the data breach; (3) payments for time spent mitigating the effects of the data breach at $20.00 per hour (capped at $60.00); and (4) one or two years of three-bureau credit monitoring services with $1 million in identity theft insurance that will be provided by Diligent separate from, and in addition to, the direct payments described above. *Id.* at ¶¶ 45-47. To

the California Settlement Subclass Members, the Settlement further provides a $50 cash payment subject to the $500 cap on out-of-pocket expenses, as consideration for releasing their California-specific legal claims against Diligent. *Id.* at ¶ 45(d). Diligent will separately pay the costs of notice to the Settlement Class and costs of Settlement Administration. *Id.* at ¶ 59. Diligent will also pay for Plaintiffs' attorneys' fees, costs, and expenses, and the service awards to Plaintiffs. *Id.* at ¶¶ 73, 75.

The Settlement Agreement provides immediate and guaranteed benefits to the Settlement Class. Thus, the Court should certify the Settlement Class and approve the Settlement under Rule 23 so the Parties may deliver those benefits.

## III.    BACKGROUND

### A.  Defendant's Data Breach and Plaintiffs' Claims

Diligent is a Software-as-a-Service company that provides management and governance software to board members of corporations, government organizations, and not-for-profit groups across the country, allowing them to share information and collaborate. ECF No. 33 at ¶¶ 1, 22. On Saturday May 21, 2022, Diligent's network was attacked by the ransomware hacker group HiveLeaks. *Id.* at ¶¶ 31, 38. On May 23, 2022, Diligent discovered the data breach. *Id*. at ¶¶ 32, 33. The hackers accessed certain personal information related to Diligent employees , including names, email addresses, mailing addresses, and Social Security numbers. *Id*. Plaintiffs are both former Diligent employees and were impacted by this data breach, along with approximately 2,500 other current and former employees. *Id*. at ¶¶ 2, 40, 49; ECF No. 46 at 12

Following Diligent's notification to those affected by the data breach and an investigation by Settlement Class Counsel, Plaintiff Fred Whelan, Jr. filed this class action lawsuit against Diligent on September 6, 2022. ECF No. 1, Complaint. On May 8, 2023, Megan Ellis was added as a plaintiff. ECF No. 33. Plaintiffs allege that, as a result of the data breach, Diligent is liable for

negligence and negligence per se, unjust enrichment, breach of contract, invasion of privacy under Massachusetts law, and declaratory and injunctive relief. *Id.* Diligent denies these allegations and denies that Plaintiffs and the Settlement Class are entitled to any relief. ECF No. 37-1 at 1.

### B. Arms'-length Negotiations & Preliminary Approval

Considering the risks of continued litigation and all other factors bearing on the merits, the Parties agreed to mediate on February 28, 2023. ECF No. 49 at ¶ 2. Bruce Friedman from JAMS assisted the Parties in reaching resolution on certain key terms related to the Settlement, which were memorialized in a term sheet on April 16, 2023, but it was not until weeks later that the Parties reached a final resolution on all issues, including fees, expenses, and service awards. *Id.* The Settlement Agreement was finalized and executed on June 22, 2023. ECF No. 37-1.

Plaintiffs filed their Consent Motion for Preliminary Approval on June 26, 2023, which was denied on December 19, 2023, for the reasons outlined in the Court's Order. ECF Nos. 37-39. Plaintiffs' counsel addressed the issues identified by the Court in multiple supplemental submissions on January 22, 2024; September 12, 2024; and March 7, 2025. ECF Nos. 40-41, 44-45. The Court then granted preliminary approval of this Class Action Settlement on April 4, 2025. ECF No. 46.

### C. Notice Program & Claims Activity

Since the Court granted and entered the Preliminary Approval Order, the Parties, in conjunction with the Settlement Administrator, Angeion Group, have effectuated Notice consistent with the Settlement and Preliminary Approval Order. ECF No. 49 at ¶ 9. Diligent provided Angeion with 2,567 records of Settlement Class Members containing mailing addresses and/or email addresses, where available. Saunders Decl., ¶ 8. 109 of these records did not contain sufficient mailing address or email address information to enable direct notice to be sent to the Settlement

Class Member. *Id.* Of the remaining records, a total of 2,458 contained a complete mailing address and/or a valid email address. *Id.*

On May 2, 2025, Angeion mailed a Postcard Notice to 2,454 Settlement Class Members where a sufficient mailing address could be determined and sent an Email Notice to 318 Settlement Class Members records where a sufficient email address could be determined. *Id.* at ¶¶ 8, 9. Some Settlement Class Members received both mail and email notice. Of the 318 Email Notices sent, 12 were returned as undeliverable, and of the 2,454 Postcard Notices mailed, 502 were returned undeliverable. *Id.* at ¶¶ 10, 13. Angeion conducted address verification searches (commonly referred to as "skip traces") on the 502 undeliverable addresses, and was able to locate an updated the address for 319 Settlement Class Members. *Id.* at ¶¶ 13-14. Accordingly, Angeion re-mailed Notice to the 319 updated addresses identified in the skip trace. *Id.* Additionally, on June 9 and 10, 2025, Angeion mailed 2,177 Reminder Postcard Notices to Settlement Class Members and 300 Reminder Email Notices to Settlement Class Members who had not yet filed a claim. *Id.* ¶¶ 14-15. As of August 21, 2025, the Notice Program resulted in 2,249 Settlement Class Members receiving Notice, which is approximately 91.5% of the 2,458 Settlement Class Members identified. *Id.* at ¶ 17.

The deadline for members of the Settlement Classes to request exclusion from the Settlement was July 3, 2025. To date, only one Settlement Class Member has requested exclusion, and there have been zero objections to the Settlement. *Id.* at ¶ 25. Additionally, Settlement Class Members had 120 days from the day the Settlement Administrator notified the Settlement Class to timely submit claims. ECF No. 37-1 at ¶¶ 7-8. The claims period closes on September 2, 2025. ECF No. 49, Declaration of Raina C. Borrelli, at ¶ 9. As of August 21, 2025, Angeion has received

a total of 141 Claim Form submissions.  Saunders Decl., ¶ 24. Angeion is continuing to review the claims submitted to-date for validity. *Id.*, ¶ 24.

## IV.    ARGUMENT

### A.  The Court Should Approve the Settlement Under Rule 23 and the Grinnell Factors

Courts encourage parties to settle class actions given their potential for costs, delays, complexity, and risks: "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citing *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993)); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Data breach cases are some of the most risky, and that is one of the reasons why courts favor settlement of these cases. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *18, *24 (W.D. Ky. Aug. 23, 2010).

Courts approve settlements in two steps. First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).  Second, where preliminary approval is granted, the court then directs the preparation of notice of the proposed settlement to the settlement class and schedules the date of the final fairness hearing. *Id.* At the final fairness hearing, "Class members…have an opportunity to present their

views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is 'fair, reasonable, and adequate.'" *Id*. (citing *Manual for Complex Litigation, Fourth* §§ 21.632-21.635 (2004)).

The Second Circuit has developed factors governing whether settlements are "fair, reasonable and adequate." Those factors, referred to herein as the *Grinnell* factors, are:

> (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class through the trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 190 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Altogether, the *Grinnell* factors determine whether the settlement results from "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies." *Cohen*, 262 F.R.D. at 157.

Rule 23 lists its own criteria for approving settlements, but Rule 23's factors do not supplant the *Grinnell* factors. *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431 (AT), 2023 U.S. Dist. LEXIS 42647, at *8 (S.D.N.Y. Mar. 14, 2023) ("This [Rule 23] inquiry overlaps with the *Grinnell* factors"). Instead, Rule 23's criteria focuses "the court and the lawyers on the core concerns of procedure and substance" under four factors: (i) adequacy of representation; (ii) whether there were arm's length negotiations; (iii) adequacy of relief; and (iv) equity between class members. *Id.*; *see also* the Advisory Committee Notes to the 2018 amendments to Rule 23. Specifically, within the third factor, adequacy of relief, the Court considers many of the *Grinnell* factors

including the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

Because the *Grinnell* factors and Rule 23(e) factors "overlap," Plaintiffs condense their analysis below. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *8 (applying a condensed analysis); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022) (same).

### 1. Plaintiffs and Plaintiffs' counsel represented the Settlement Classes "adequately"

The Settlement satisfies Rule 23(e)(2)(A) because Plaintiffs and their counsel represented the Settlement Classes "adequately" when negotiating the resolution. Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Determining adequacy typically entails inquiring into whether (1) the representative plaintiffs' interests are antagonistic to the interests of other class members, and (2) the representative plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. *In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). Plaintiffs have satisfied this inquiry.

The resulting Settlement provides for a Settlement Class consisting of all individuals, or their respective successors or assigns, who reside in the United States and whose personal information was impacted by the data breach, as well as a California Settlement Subclass, providing California residents with settlement benefits in exchange for the release of California statutory claims. ECF No. 37-1 at ¶¶ 4, 38. There is no antagonism between Plaintiffs, their counsel, and the Settlement Classes because the harms that Plaintiffs have allegedly experienced and their interests in pursuing the remedies sought in this action are substantially the same as those of other Settlement Class Members. ECF No. 38 at ¶ 4. Plaintiff Ellis, a member of the Settlement Class and California Settlement Subclass, seeks to represent both, while Plaintiff Whelan is not a

member of the California Subclass. ECF No. 33; ECF No. 40, Letter to Judge Torres (Jan. 22, 2024) at 1. Therefore, Plaintiff Whelan is accepting the same relief on the same terms as all other Settlement Class Members, and Plaintiff Ellis is accepting the same relief on the same terms as all other California Settlement Subclass Members. Although Plaintiffs request a service award, such an award is not guaranteed, and the Settlement Classes will receive the Settlement's benefits no matter how the Court rules on Plaintiffs' request.

Additionally, Plaintiffs have shown their commitment to their representative role by helping their attorneys investigate the breach, supplying facts to support their complaint, providing information in advance of mediation, and making themselves available throughout the mediation and settlement process to answer questions and represent the interests of the Settlement Class. ECF No. 40 at 13-14; ECF No. 48, Plaintiffs' Memo in Support of Attorney Fees, at 21-22. They were each prepared to take on the responsibilities of a class representative, including being deposed and testifying at trial. ECF No. 48 at 22. Furthermore, Plaintiffs and their counsel withheld negotiating attorneys' fees, costs, and service awards until after the Parties agreed on the Settlement's core terms applicable to the Settlement Classes, thus removing any potential conflict that may result from concurrent negotiations. ECF No. 48 at 10; ECF 48-1 at ¶ 5.

Finally, Plaintiffs' counsel has the experience needed to represent the Settlement Class and secure relief. The Strauss Borrelli PLLC Firm Resume is attached hereto as **Exhibit A.** *See also* ECF No. 38 at ¶¶ 10, 18. Counsel has represented individuals affected by data breaches across the country and reached settlements that courts routinely approve. And that experience combined with the work that Plaintiffs' counsel has performed in this case served Plaintiffs and the Settlement Classes considering the results achieved in the Settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405

F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co*., No. 11 Civ. 8331-CM-MHD, 2014 U.S. Dist. LEXIS 37872, at *6 (S.D.N.Y. Mar. 21, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Plaintiffs' counsel was fully informed about the facts, risks, and challenges of this action and had a sufficient basis on which to negotiate a very significant settlement. As a result, the Court should find Plaintiffs have satisfied this factor.

### 2.  The Court should presume the Settlement is "approvable"

To achieve the "fairness" that Rule 23(e)(2)(B) demands, Plaintiffs must show their proposal was negotiated at "arm's length." While not directly one of the *Grinnell* factors, the relevant considerations of Rule 23(e)(2)(B) to some extent overlap with *Grinnell* factor three (the stage of proceeding and the amount of discovery completed), and factors eight and nine (the reasonableness of the settlement). If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018). That presumption applies here.

After engaging in early Rule 408 communications and discovery, the Parties spent approximately six months negotiating the Settlement at arm's-length with the assistance of Mr. Friedman from JAMS, a mediator experienced in resolving data breach cases. ECF No. 38 at ¶¶ 6–9; ECF No. 48 at 16. The Parties communicated their positions through the mediator, who helped them independently evaluate the strengths and weaknesses of their claims and defenses. *Id.* at ¶ 8. From the start, the Parties agreed that they would not negotiate attorney's fees or service awards

until they reached an agreement in principle on the core terms of the Settlement. *Id.* Throughout all negotiations, counsel for all fought hard for the interests of their respective clients. *Id.*

Although the Parties settled this matter before formal discovery started, the lack of formal discovery is no bar to approving the Settlement's terms as Plaintiffs' counsel insisted on, and received, pre-mediation discovery, sufficiently meeting the third *Grinnell* factor. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) ("although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, *16 (S.D.N.Y. June 7, 2011) (counsel had "completed enough investigation to agree on a reasonable settlement" even without discovery). Indeed, the "pertinent question" is not whether Plaintiffs conducted Rule 26 discovery, but "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Willix v. Healthfirst, Inc.,* No. 07–cv–1143, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011).

Because Plaintiffs gathered the facts they needed before mediating, they understood the landscape affecting settlement just as if they had conducted discovery, and were therefore able to successfully negotiate a settlement falling within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. Moreover, early settlement where the Parties are adequately informed to negotiate, as here, is to be commended. *Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30 (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours in legal fees); *In re Interpublic Sec. Litig.,* No. 02 Civ. 6527, 2004 U.S. Dist. LEXIS 21429, *36 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). Additionally, and as detailed above, Plaintiffs' counsel litigates privacy cases like data breaches in state and federal actions, meaning they understand how

this Settlement compares to other data breach settlements. ECF No. 38 at ¶¶ 17-18. This allowed Plaintiffs' counsel to evaluate the value of this case, including the risks of proceeding in litigation compared to the relief that could be achieved, which are the primary considerations of *Grinnell* factors eight and nine. Armed with this knowledge, Plaintiffs' counsel negotiated through a third-party neutral the Settlement with opposing counsel, who are also experienced and knowledgeable in complex class litigation.

For these reasons, the Court should find Plaintiffs have satisfied Rule 23(e)(2)(B) and the third, eighth, and ninth *Grinnell* factors.

### 3. The Settlement's relief is "adequate" considering this case's complexity and risks and the relief the Settlement achieves

The following factors, which overlap with the *Grinnell* factors in part, are relevant considerations for determining whether relief for the Settlement Classes is adequate:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Each of the Rule 23(e)(2)(C) and the overlapping *Grinnell* factors favors final approval here.

#### i.    The costs, risks, and delay of trial and appeal

This first Rule 23(e)(2)(C) factor overlaps with *Grinnell* factors one (complexity, expense, and likely duration of litigation), four (risks of establishing liability), five (risks of establishing damages), and six (risks of maintaining class status through trial), as all of these factors address the trade-offs between settling now versus the legal uncertainty and the practical burdens involved in litigating.

Without settling, this case faced risks that would have delayed or doomed Plaintiffs' chances of recovery. Almost "all class actions involve a high level of risk, expense, and complexity." *Desue*, 2023 U.S. Dist. LEXIS 117355, at *24. And this is not only a "complex" case but also "lies within an especially risky field of litigation: data breach." *Id*. This is why courts favor settling breach cases, as "proceeding through the litigation process…is unlikely to produce the plaintiffs' desired results." *In re Countrywide*, 2010 U.S. Dist. LEXIS 87409, at *25-26; *see, also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.").

To start, data breach cases do not always clear the motion-to-dismiss stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.,* No. 08 Civ. 6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *5-6 (S.D.N.Y. June 25, 2010) (collecting dismissed data breach cases at the Rule 12(b)(6) stage). And if they do, courts will still sometimes dismiss them at summary judgment or refuse to certify them. *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03– 0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same). Although Plaintiffs believe they would have overcome these hurdles given the facts in issue, the case nevertheless presented risks that justified settling.

To justify taking this case to trial (and significantly delaying any redress to the Settlement Class), Plaintiffs would need to clear these hurdles and achieve a better result when there are no

grounds to believe trial would yield one. The Court and Parties cannot estimate the upside in litigating this case through to trial because plaintiffs affected by a data breach have yet to try a case, so there is no verdict to measure their result against. Nor is this case the right candidate for trial given the relief the Settlement delivers. Again, the Settlement achieves what Plaintiffs sought in their complaint—compensation for their and the Settlement Class Members' losses. There is no reason to risk losing recovery entirely by refusing to settle on those terms. As a result, the Court should find that the first Rule 23(e)(2)(C) factor and the first, fourth, fifth, and sixth *Grinnell* factors weigh in favor of approval.

### ii. The effectiveness of the proposed method of distributing relief to the Settlement Classes

The effectiveness of Plaintiffs' Notice Program is demonstrated by its success. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). There are no rigid rules for determining whether a settlement notice satisfies constitutional or Rule 23(e) requirements; the notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. at 114. Second Circuit courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class."

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006) (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

The Court should approve the Notice Program because it succeeded. As discussed above, Angeion delivered Notice via mail and/or email to 91.5% of the 2,458 Settlement Class Members with valid mailing and/or email address. Saunders Decl., ¶ 17. The substance of the Notice was clear and concise and informed Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provided specific information regarding the date, time, and place of the final approval hearing. ECF No. 37-1 at Exs. 1-3. Additionally, the Notice facilitated participation by providing a Settlement Website and telephone line maintained by Angeion. ECF No. 37-1 at ¶¶ 56-58; Saunders Decl., ¶¶ 18-22. The Settlement Website includes a FAQs section which answer questions related to basic information, who is in the settlement, the settlement benefits, how to get a payment/making a claim, the lawyers involved, how to exclude oneself from the settlement, how to comment on or object to the settlement, the court's final approval hearing, what happens if one does nothing, and how to get more information.[1] As of August 21, 2025, the Settlement Website has had approximately 1,252 page views and approximately 841 sessions, and the toll-free line, which is accessible 24/7, has received approximately 10 phone calls. *Id.* at ¶¶ 19-22. As such, the Settlement Website provided the Settlement Class with ample opportunity to obtain information about the Settlement and file a claim.

As of August 21, 2025, Angeion has received a total of 141 Claim Form submissions, which are still subject to final audits, including a final assessment of each claim's validity and a review for duplicate submissions. *Id.* at ¶ 24. Of these, 92 were submitted online and 49 were submitted by mail. *Id.* The Claim Form, Section V, Payment Selection, allows Settlement Class Members to

---

[1] *See* https://www.diligentsteelesettlement.com/faqs

select various payment options to be used for receiving Settlement payments, including PayPal, Venmo, Zelle, a Virtual Prepaid Card, and Physical Check. *Id.*, Exhibit F. Therefore, Settlement Class Members can select a high-speed delivery option in the event they have a PayPal, Venmo, or Zelle account, and if Settlement Class Members do not have such an account, or simply prefer an alternative payment method, they can select payment via check or virtual prepaid card. Additionally, on the Settlement Website, the FAQs section includes information on how to submit a claim and get a cash payment, as well as the timing of receiving the payment.[2] It informs Settlement Class Members that the Court is scheduled to hold a final approval hearing on September 15, 2025 to decide whether to approve the Settlement, and that if any appeals are filed, it is uncertain how long it will take to resolve them – but confirms that Settlement payments will be distributed as soon as possible, if and when the Court grants final approval to the Settlement and after any appeals are resolved.[3]

Finally, the costs of settlement administration, including the cost of distributing the Notice, was paid by Diligent outside of the  funds available to Settlement Class Members. ECF No. 37-1 at ¶ 59. Indeed, Plaintiffs' method of relief distribution provided "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13 Md. 2476,  2016 U.S. Dist. LEXIS 54587, at *28 (S.D.N.Y. Apr. 25, 2016).

In summary, the notice was  the "best notice that [was] practicable under the circumstances " and succeeded at what it aimed to do. Fed. R. Civ. P. 23(c). Saunders Decl., ¶ 28.

---

[2] *See* https://www.diligentsteelesettlement.com/faqs
[3] *Id.*

### iii. The terms of any proposed award of attorney's fees, including timing

In accordance with the Settlement, Settlement Class Counsel timely petitioned the Court to approve attorneys' fees, costs, and service award requests on June 23, 2025 (ECF Nos. 47-49), which was 14 days before the Objection and Opt-Out Deadlines (ECF Nos. 37-1 at 54). Pursuant to this Court's Preliminary Approval Order, the Court will consider Plaintiffs' Motion at the fairness hearing on September 15, 2025. In the interest of judicial efficiency, Plaintiffs refer this Court to, and incorporate herein, Plaintiffs' Memo in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, and Ms. Borrelli's accompanying Declaration. ECF Nos. 47-49.

In brief review, separate from the direct benefits available to the Settlement Class Members, Diligent agreed to pay $100,000 for payment of attorneys' fees; up to $8,000 for reimbursement of reasonable litigation expenses; and $2,500 for service awards per Plaintiff ($5,000 total); and separately, all costs of notice and claims administration. ECF No. 37-1 at ¶¶ 73-76. These requests are well within the range of those regularly accepted by Second Circuit courts. *See Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *30 (S.D.N.Y. Sep. 22, 2020) (in a claims based class settlement, awarding 51.75% of the total benefit to the class as attorneys' fees); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted).

Diligent also agreed to pay any Court-approved attorneys' fees and expenses to an account established by Settlement Class Counsel within thirty (30) days after the Effective Date. *Id.* at ¶ 75. Effective Date means one business day following the latest of:

> (i) the date upon which the time expires for filing or noticing any reconsideration or appeal of the Final Approval Order and Judgment, or entry of the Final Approval Order and Judgment if no person or entity has standing to appeal or seek reconsideration; (ii) if there is an appeal or appeals or reconsideration sought, other than an appeal or appeals or reconsideration solely with respect to attorneys' fees, costs, and expenses, the date on which the Final Approval Order and Judgment is affirmed without any material modification and is no longer subject to judicial review; or (iii) the date of final dismissal of any appeal or reconsideration or the final dismissal of any proceeding on certiorari with respect to the Final Approval Order and Judgment, and the Final Approval Order and Judgment is no longer subject to judicial review.

Plaintiffs request that their Motion be granted, and that the Court (1) award attorneys' fees and expenses comprised of $100,000 in fees and $8,000 in expenses, and (2) approve a service award of $2,500 for each Settlement Class Representative.

### iv.    Any agreement required to be identified under Rule 23(e)(3)

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

### 4.  The Settlement treats Settlement Class Members equitably and is within the "range of reasonableness"

In considering the overall adequacy of the relief, *Grinnell* factors seven (the ability of the defendants to withstand a greater judgment), eight (the range of reasonableness of the settlement fund in light of the best possible recovery), and nine (the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation) are relevant.

As noted above, the Settlement provides four key benefits to all Settlement Class Members: (1) payments up to $2,500.00 in extraordinary out-of-pocket expenses "more likely than not caused

by" the data breach; (2) payments up to $500.00 in ordinary out-of-pocket expenses that are "fairly traceable" to the data breach; (3) payments for time spent mitigating the effects of the data breach at $20.00 per hour (capped at $60.00); and (4) one or two years of three-bureau credit monitoring services with $1 million in identity theft insurance which will be provided by Diligent separate from, and in addition to, the direct payments described above. *Id.* at ¶¶ 45-47. To the California Settlement Subclass Members, the Settlement further provides a $50 cash payment subject to the $500 cap on out-of-pocket expenses, as consideration for releasing their California-specific legal claims against Diligent. *Id.* at ¶ 45(d). Diligent also agreed to separately pay the costs of notice to the Settlement Class and costs of Settlement Administration, and for Plaintiffs' attorneys' fees, costs, and expenses, and service awards. *Id.* at ¶¶ 59, 73, 75.

The relief provided to the Settlement is adequate and commensurate with, or better than, relief offered in similar data breach class action settlements. *See In re Canon United States Data Breach Litig.*, No. 20-CV-6239-AMD-SJB, 2024 U.S. Dist. LEXIS 138499, at *7 (E.D.N.Y. Aug. 5, 2024) (approving data breach settlement where class members were eligible for equitable and monetary relief, including reimbursements of up to $300 for an Ordinary Expense and up to $7,500 for an Extraordinary Expense, and two years of free credit monitoring services); *Currie v. Joy Cone Co.*, No. 2:23-CV-00764-CCW, 2024 U.S. Dist. LEXIS 111294, at *2-3 (W.D. Pa. June 25, 2024) (approving data breach settlement where class members received up to $500 per person for "ordinary losses" (including $20 per hour for lost time for a total of $80); up to $4,500 per person for "extraordinary losses"; two years of credit monitoring and identify theft protection with $1 million in insurance; and, in the alternative to loss reimbursement and credit monitoring, a cash payment of $50 per person, with an aggregate cap on the claims of $300,000). *See In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 U.S. Dist. LEXIS 102805, at *29-30

("Comparable data breach cases have provided lower settlement payments to class members, with relief that includes a payment of $10 or merchant coupons"); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440, at *5 (S.D.N.Y. Jan. 5, 2023) (reimbursing out-of-pocket losses and offering credit monitoring, but no cash payment); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993, at *6 (S.D.N.Y. Oct. 23, 2023) (same).

The value achieved through the Settlement is guaranteed and immediate, where chances of prevailing on the merits are uncertain. Again, while Plaintiffs strongly believe in the merits of their case, they also understand that Diligent will assert potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Thus, the eighth and ninth *Grinnell* factors weigh in favor of final approval.

The ability of Diligent to withstand a greater judgment is not at issue here. In fact, even if Diligent could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Thus, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

Finally, the Settlement treats all Settlement Class Members fairly and equally, as each Settlement Class Member may obtain compensation for out-of-pocket losses, lost time, and credit monitoring. The $50 payment to California Settlement Subclass Members only, is equitable considering only California residents are giving up California statutory claims, which carry

20

statutory damages. The *Kostka* court explained that structuring a settlement to address California-specific claims is "equitable, if not equal" in data breach cases because "class members from California have a stronger basis for damages than do class members from outside the state—who may only be able to show nominal or incidental damages as a result of [the breach]—and so their modestly increased recovery is justified." *Kostka v. Dickey's Barbecue Rests., Inc.,* No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *40-41 (N.D. Tex. Oct. 14, 2022). In other words, creating the California Settlement Subclass achieves the "equitable" result that Rule 23 demands, even if that result is not "equal." Because the goal is equity in benefits, not equality, the Court should find that the Settlement treats Settlement Class Members equitably and within the range of reasonableness.

### 5. The Settlement Classes' reaction to the Settlement

It is "well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Grinnell,* 495 F.2d at 462-63. The Settlement Class's reaction to the Settlement has been resoundingly positive. Although one individual requested exclusion, he did not object to the settlement. Saunders Decl., ¶ 25. Because there is no evidence the Settlement Class disapproves of the Settlement in any way, "the reaction of the class to the settlement also weighs in favor of final approval of the Settlement Agreement." *In re Nano-X Sec. Litig.,* No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340, at *10 (E.D.N.Y. Apr. 17, 2024). Therefore, consideration of *Grinnell* Factor two (the reaction of the class to the settlement) does not weigh against final approval.

**B. The Court Should Certify the Settlement Class and California Settlement Subclass for Settlement Purposes**

Certifying a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 658 (S.D.N.Y. 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). The Court preliminarily certified the Settlement Class and the California Settlement Subclass in its Preliminary Approval Order and the reasons justifying the Order have not changed. ECF No. 46 at 11-15. For that reason, the Court can rely on its order without analyzing Rule 23's factors again. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.,* 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage). For completeness, the Court certified the Settlement Class and the California Settlement Subclass for five reasons.

First, the Court found the Settlement Classes likely satisfied Rule 23(a)'s numerosity requirement because Plaintiffs' counsel estimated, based on materials obtained in discovery, that there were approximately 2,500 Settlement Class Members, of which 1,000 were members of the California Settlement Subclass. ECF No. 46 at 12. In the Second Circuit, numerosity is met when there are forty or more class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Court found that due to this size and the desirability of concentrating litigation in a single forum, *see* Fed. R. Civ. P. 23(b)(3), "the class action device [is likely] superior to other methods available for a fair and efficient adjudication of th[is] controversy," *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). ECF No. 46 at 14-15. There are still approximately 2,500 Settlement Class Members (specifically, Diligent provided 2,567 unique records to Angeion of which 2,458 contained a complete mailing address and/or a valid email address) and 91.5% of

them were directly notified of this Settlement, and so the facts underlying this find remain unchanged. Saunders Decl., ¶¶ 8, 17.

Second, the facts supporting the Court's finding of commonality remain the same. The same issues that affect Plaintiffs affect the Settlement Class, as Plaintiffs experienced the same alleged injuries as the members of the Settlement Class stemming from the data breach. As such, Plaintiffs' and the Settlement Class Members' claims raise common factual and legal questions, including: whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Settlement Classes' data; whether Defendant was allegedly negligent in maintaining, protecting, and securing data; whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it; whether Defendant's Breach Notice was reasonable; and other common questions detailed in Plaintiffs' Amended Complaint. ECF No. 30 at ¶ 78. These common questions, and others alleged in the Amended Complaint, are central to the causes of action brought here and apply equally to all Settlement Class Members. The California Settlement Subclass raises additional common questions as to whether Diligent's conduct violated California law. ECF No. 45 at 2; ECF No. 46 at 12-13.

Third, typicality is satisfied for the same reasons outlined in the Court's order (ECF No. 46), as Plaintiffs' and Settlement Class Members' claims all stem from the same event—the data breach at issue in the Amended Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Because Plaintiffs' claims "arise[] from the same course of events" as the other Settlement Class members' claims, each Settlement Class member would be able to "make[] similar legal arguments to prove [Diligent's] liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). ECF No. 45 at 13. As a result, to

prove Defendant's liability, all members of the Settlement Class could raise the same legal arguments in support of the claims brought by Plaintiff Whelan, and all members of the California Settlement Subclass could raise the same legal arguments in support of the California-specific claims brought by Plaintiff Ellis. The fact California Settlement Subclass Members will be eligible for additional compensation based on the law of the state in which they reside does not defeat this analysis.

Fourth, Plaintiffs satisfy the adequacy requirement for the reasons discussed above. *See supra* at Sections IV.A.3 and IV.A.4. In brief, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out the same data breach. Plaintiffs' and Settlement Class Members' data was all allegedly compromised in the same manner. Under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for credit monitoring and monetary relief.

Fifth, the Settlement Classes satisfy Rule 23(b)(3)'s predominance and superiority requirements for the reasons outlined in the Court's Order (ECF No. 46). Indeed, the Settlement Class and the California Settlement Subclass Members are unified by common factual issues and legal theories which "can be determined on a class-wide basis ." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); ECF No. 33 at ¶ 79. Additionally, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits, and certification of the Settlement Class and California Settlement Subclass will therefore increase judicial efficiency and conserve resources.

As a result, the Court should apply the same analysis it applied in its preliminary approval order to certify the Settlement Class and the California Settlement Subclass under Rule 23.

## V.    CONCLUSION

For the reasons above, the Court should finally approve the Parties' Settlement, certify the Settlement Class and the California Settlement Subclass, and enter the proposed Final Approval Order.

## CERTIFICATION

I certify that this memorandum contains 7,702 words, in compliance with this Court's Individual Practices in Civil Cases.

Dated:  September 2, 2025                    Respectfully submitted,

By:  */s/ Raina C. Borrelli*
    Raina C. Borrelli
    raina@straussborrelli.com
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109

    James J. Bilsborrow (NY Bar # 519903)
    jbilsborrow@weitzlux.com
    WEITZ & LUXENBERG, PC
    700 Broadway
    New York, NY  10003
    Telephone: (212) 558-5500

    *Attorneys for Plaintiffs and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on September 2, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, below, via the ECF system.

DATED this 2nd day of September, 2025.

STRAUSS BORRELLI PLLC

By:  */s/ Raina C. Borrelli*
    Raina C. Borrelli
    raina@straussborrelli.com
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109